# 25-4496

## United States Court of Appeals for the Fourth Circuit

In the Matter of the Search of

UNDER SEAL.

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF VIRGINIA AT ALEXANDRIA

# OPENING BRIEF FOR MOVANT-APPELLANT

JONATHAN M. KNOWLES, ESQ.
BURNHAM & GOROKHOV, PLLC
1634 I Street NW, Suite 575
Washington, DC 20006
(347) 273-1828
*jonathan@burnhamgorokhov.com*

*Counsel for Movant-Appellant*

Dick Bailey Service INC
APPELLATE SERVICES
www.dickbailey.com

# TABLE OF CONTENTS

Table of Authorities ........................................................................ iii

Introduction ........................................................................................ 1

Statement of Jurisdiction .................................................................... 1

Issues.................................................................................................. 2

Statement of the Case ......................................................................... 2

Summary of Argument ........................................................................ 5

Argument ............................................................................................ 7

I. Appellant Has a Constitutional Right to View the Affidavit Underlying the Search. As Many Courts Have Recognized, The Fourth Amendment Provides a Pre-Indictment Right for the Target of a Search to Access the Warrant Affidavit. ........................................................ 7

A. Access to the Affidavit Is Essential to Both a Target's Fourth Amendment Rights and the Purpose of the Fourth Amendment. ........................................................................ 8

B. Historical Practice Further Supports Appellant's Right to Access the Search Warrant Affidavit. ............................................ 18

C. The Court Should Not Follow the Cursory and Unpersuasive Reasoning of *EyeCare Physicians*, Which Failed to Address the Reasons Underlying a Fourth Amendment Right of Access. 25

II. Because Appellant Has a Constitutional Right to Access the Search Warrant Affidavit, the Court Should Review the Motion to Unseal *de Novo*........................................................................29

III. The District Court Failed to Follow the Appropriate Procedures to Determine Whether the Government's Interest in

Sealing the Affidavit Sufficiently Outweighed Appellant's Interest in Access. 31

A. The District Court Failed to Justify Its Decision to Seal the Affidavit. ... 32

B. The District Court Failed to Give the Public Notice of the Government's Request to Seal. ... 38

Conclusion ... 39

Request for Oral Argument ... 39

Certificate of Compliance ... 40

Certificate of Filing and Service ... 41

# TABLE OF AUTHORITIES

## CASES

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ....................................................15

*Balt. Sun Co. v. Goetz*, 886 F.2d 60 (4th Cir. 1989) ............23, 29-33, 38

*Cactil, LLC v. United States*, No. 3:24-cv-01270-LL-AHG, 2024 WL 4139642 (S.D. Cal. Sept. 10, 2024) ........................8, 26, 29, 33, 34, 36

*Camara v. Municipal Ct. of S.F.*, 387 U.S. 523 (1967) ..................15-16

*Doe v. Public Citizen*, 749 F.3d 246 (4th Cir. 2014) ..........................30

*Elkins v. United States*, 364 U.S. 206 (1960) .............................11, 27

*Groh v. Ramirez*, 540 U.S. 551 (2004) ..............................................9

*In re EyeCare Physicians of Am.*, 100 F.3d 514 (7th Cir. 1996) ......25-29

*In re Grand Jury Subpoena to Roe & Roe, Inc.*, 49 F. Supp. 2d 451 (D. Md. 1999) ......................................................................................13

*In re Knight Pub. Co.*, 734 F.2d 213 (4th Cir. 1984) ..........................38

*In re Search of 624 NE 2nd Street, McMinnville, Or.*, No. 3:17-mc-00588, 2019 WL 13074677 (D. Or. Jan. 25, 2019) ...........5-6, 14, 15, 29

*In re Search of 8420 Ocean Gateway, Easton, Md.*, 353 F. Supp. 2d 577 (D. Md.), *aff'd sub nom. In re Search Warrants Issued on April 26, 2004*, 353 F. Supp. 2d 584 (D. Md. 2004) ..................................7, 13, 33-36

*In re Search of 14416 Coral Gables Way, North Potomac, Md.*, 946 F. Supp. 2d 414 (D. Md. 2011) .........................................7, 8, 33-37

*In re Search of L.S. Starrett Co*, No. 1:02M137, 2002 WL 31314622 (M.D.N.C. Oct. 15, 2002) ...........................................................18, 23

*In re Search of Up North Plastics, Inc.*, 940 F. Supp. 229 (D. Minn. 1996) ........................................................6, 13, 33, 34, 36

*In re Search Warrant for Secretarial Area Outside Office of Gunn*, 855 F.2d 569 (8th Cir. 1988) ........................................................23

*In re Search Warrants Issued on April 26, 2004*, 353 F. Supp. 2d 584 (D. Md. 2004) (*Search Warrants 2004*), *aff'g In re Search of 8420 Ocean Gateway, Easton, Md.*, 353 F. Supp. 2d 577 (D. Md.) ...............*passim*

*In re Search Warrants Issued August 29, 1994*, 889 F. Supp. 296 (S.D. Ohio 1995) (*Search Warrants 1994*) ....................................28, 33, 36

*In re Searches & Seizures*, Nos. 08-SW-0361 DAD to 08-SW-0364 DAD, 2008 WL 5411772 (E.D. Cal. Dec. 19, 2008) ...........7-8, 25-26, 29, 33-35

*Lindell v. United States*, 82 F.4th 614 (8th Cir.), *reh'g denied*, 2023 WL 8181110 (8th Cir. 2023), *cert. denied*, 144 S. Ct. 1350 (2024) ...12, 14, 28

*M'Culloch v. Maryland*, 17 U.S. 316 (1819) ....................................27

*Mr. Lucky Messenger Serv., Inc. v. United States*, 587 F.2d 15 (7th Cir. 1978) ......................................................................12 n.3

*Payton v. New York*, 445 U.S. 573 (1980) ....................................9, 25

*Ramsden v. United States*, 2 F.3d 322 (9th Cir. 1993) .......................13

*Ross v. Meese*, 818 F.2d 1132 (4th Cir. 1987) ..................................14

*Sandford v. Nichols*, 13 Mass. 286 (1816) ...................................20-21

*Shadwick v. City of Tampa*, 407 U.S. 345 (1972) ..............................28

*Steagald v. United States*, 451 U.S. 204 (1981) ......................18, 22, 25

*Steve Jackson Games, Inc. v. U.S. Secret Serv.*, 816 F. Supp. 432 (W.D. Tex. 1993), *aff'd*, 36 F.3d 457 (5th Cir. 1994) ............................12, 14

*Stone v. Univ. of Md. Med. Sys. Corp.*, 855 F.2d 178 (4th Cir. 1988) ....................................................................................33, 38

*Stronger v. California*, 539 U.S. 607 (2003) ....................................17

*Tennessee v. Garner*, 471 U.S. 1 (1985) ..........................................21

*United States v. Charles*, 240 F. Supp. 2d 488 (M.D.N.C. 2002) .....17-18

*United States v. Doe*, 962 F.3d 139 (4th Cir. 2020) ..........................1-2

*United States v. Griffith*, 867 F.3d 1265 (D.C. Cir. 2017) ................9-10

*United States v. Johnson*, 683 F. App'x 241 (4th Cir. 2017) ...............13

*United States v. Lull*, 824 F.3d 109 (4th Cir. 2016) ......................10, 28

*United States v. Lyles*, 910 F.3d 787 (4th Cir. 2018) ......................9, 28

*United States v. Pratt*, 915 F.3d 266 (4th Cir. 2019) .........................28

*United States v. Rabinowitz*, 339 U.S. 56 (1950) .........................22 n.4

*United States v. Sealed Search Warrants*, 868 F.3d 385 (5th Cir. 2017) ..............................................................................2, 32

*United States v. Somerlock*, 602 F. Supp. 3d 791 (D. Md. 2022) ..........10

*Va. Dep't of State Police v. Wash. Post*, 386 F.3d 567 (4th Cir. 2005) ..............................................................................*passim*

*Weeks v. United States*, 232 U.S. 383 (1914), *overruled in part by Elkins v. United States*, 364 U.S. 206 (1960) .........................11, 12 n.3, 16, 27

*Yassin v. Weyker*, 39 F.4th 1086 (8th Cir. 2022), *cert denied*, 143 S. Ct. 779 (2023) ..................................................................25

<u>**CONSTITUTIONAL PROVISIONS**</u>

U.S. Const. amend. IV ...........................................................8

<u>**STATUTES**</u>

28 U.S.C. § 1291 ..............................................................1-2

**RULES**

Fed. R. Crim. P. 41(g) ..........................................12 & n.3, 13, 27

Fed. R. Crim. P. 41, Advisory Committee Notes to 1972 Amendments ..................................................................................19, 23

**OTHER AUTHORITY**

Oren Bar-Gill & Barry Friedman, *Taking Warrants Seriously*, 106 Nw. Univ. L. Rev. 1609 (2012) ..........................................10 n.2, 15

Thomas Y. Davies, *Recovering the Original Fourth Amendment*, 98 Mich. L. Rev. 547 (1999) ..........................................20, 21, 22 n.4

Miguel F.P. de Figueiredo, Brett Hashimot & Dane Thorley, *Unwarranted Warrants? An Empirical Analysis of Judicial Review in Search and Seizure*, 138 Harv. L. Rev. 1959 (2025) .............9-11, 15, 16

David Gray, *Fourth Amendment Remedies as Rights: The Warrant Requirement*, 96 B.U. L. Rev. 425 (2016) .........................20, 22 n.4, 24

David Horan, *Breaking the Seal on White-Collar Criminal Search Warrant Materials*, 28 Pepp. L. Rev. 317 (2001) ...........11-12, 17, 23, 24

Lynn B. Oberlander, Note, *A First Amendment Right of Access to Affidavits in Support of Search Warrants*, 90 Colum. L. Rev. 2216 (1990) ..............................................................18-21, 23

James Otis, *Against Writs of Assistance* (1761), https://www.sas.upenn.edu/~cavitch/pdf-library/Otis_Against%20Writs.pdf ........................................22, 24

David E. Steinberg, *An Original Misunderstanding: Akhil Amar and Fourth Amendment History*, 42 San Diego L. Rev. 227 (2005) ........19-20

Jacob Sullum, *A Houston Drug Cop's Murder Conviction Highlights the Potentially Deadly Consequences of 'Testilying'*, Reason (Oct. 2, 2024), https://reason.com/2024/10/02/a-houston-drug-cops-murder-conviction-highlights-the-potentially-deadly-consequences-of-testilying/ ...........10

3A Charles A. Wright et al., *Federal Practice & Procedure, Criminal* (3d ed. 2004) ....................................................................................24

## INTRODUCTION

[redacted]

The search warrant affidavit is sealed. With no understanding of the basis for the search, appellant can take no steps to recover the seized property or otherwise mitigate the harm that the search caused him. That secrecy has vitiated appellant's Fourth Amendment rights to challenge the search. And, in denying appellant's motion to unseal, the district court did not even explain its decision or follow the required procedures.

## STATEMENT OF JURISDICTION

As the target of a search, appellant is not required to petition for a writ of mandamus. *See United States v. Doe*, 962 F.3d 139, 144 (4th Cir. 2020) (preference for mandamus is "limited to appeals filed by third parties, such as members of the press"). Rather, the Court has jurisdiction over this appeal under 28 U.S.C. § 1291. *See id.* at 143-45 (exercising § 1291 jurisdiction over a motion to seal that was not

collateral to an ongoing proceeding); *see also United States v. Sealed Search Warrants*, 868 F.3d 385, 388-90 (5th Cir. 2017) (holding that court had jurisdiction under § 1291 to review denial of pre-indictment motion to unseal search warrant materials).

## ISSUES

1. Whether appellant, as the target of a search, has a right under the Fourth Amendment to examine the affidavit underlying the warrant for that search.

2a. If appellant possesses such a right, whether the district court should have granted his motion to unseal the warrant affidavit.

2b. If appellant does not possess such a right, whether the district court abused its discretion under the common law in denying his motion to unseal the warrant affidavit.

## STATEMENT OF THE CASE

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

---

[redacted]

## SUMMARY OF ARGUMENT

The district court failed to follow the correct procedures: it neither gave the public notice nor explained its decision. For those reasons alone, the Court should vacate the decision and remand for further proceedings. More importantly, however, the district court failed to contend with the strength of appellant's right to inspect the affidavit.

"The very premise of the Fourth Amendment is the right of a citizen to challenge the intrusion of government authority into his home or workplace." *In re Search Warrants Issued on April 26, 2004*, 353 F. Supp. 2d 584, 587 (D. Md. 2004) (*Search Warrants 2004*), *aff'g In re Search of 8420 Ocean Gateway, Easton, Md.*, 353 F. Supp. 2d 577 (D. Md.). That premise necessarily implies the "right to challenge both the reasonableness of the search and the degree to which the warrant was supported by probable cause." *Id.* at 588.

Those rights cannot be tied to the time of indictment. If they were, "the government could indefinitely prevent a target from exercising his or her Fourth Amendment rights . . . ." *In re Search of 624 NE 2nd Street, McMinnville, Or.*, No. 3:17-mc-00588, 2019 WL 13074677, at *8 (D. Or. Jan. 25, 2019). For the Fourth Amendment "to have meaning, its

protection must apply to citizens in those instances where the government searches and seizes their property before [it] charges them with a crime." *Id.* at *9.

As a practical matter, one who cannot review the warrant affidavit has no Fourth Amendment rights. *See In re Search of Up North Plastics, Inc.*, 940 F. Supp. 229, 233 (D. Minn. 1996) ("To permit an affidavit . . . to remain sealed against examination by the person whose property was searched deprives him of the right . . . to challenge that search."). Such a person could not seek the return of seized property, sue for damages, or take any steps to deter further unreasonable searches. *See Search Warrants 2004*, 353 F. Supp. 2d at 586-91. This unity between Fourth Amendment rights and access to the affidavit is demonstrated by the access that targets of a search historically enjoyed, which was essential to seeking relief for wrongful invasions of their property and privacy. The necessity of access is reinforced by the government's routine attempts to conceal materials that were once typically available.

Because appellant has a constitutional right to access the warrant affidavit, the Court should review the motion to unseal *de novo*, granting the motion unless the government shows that sealing is narrowly tailored

to a compelling government interest. *See Va. Dep't of State Police v. Wash. Post*, 386 F.3d 567, 575 (4th Cir. 2005). Alternatively, the Court should remand and require such a showing before the district court. To meet its burden, the government must provide case-specific evidence that disclosure would pose an unacceptable risk to the investigation that cannot be prevented through any means short of sealing. *See In re Search of 14416 Coral Gables Way, North Potomac, Md.*, 946 F. Supp. 2d 414, 420, 428 (D. Md. 2011); *8420 Ocean Gateway*, 353 F. Supp. 2d at 579-81.

## ARGUMENT

The appropriate standard of review depends on whether appellant has a constitutional right to access the warrant affidavit. Therefore, we begin with that issue before addressing the standard of review.

### I. APPELLANT HAS A CONSTITUTIONAL RIGHT TO VIEW THE AFFIDAVIT UNDERLYING THE SEARCH. AS MANY COURTS HAVE RECOGNIZED, THE FOURTH AMENDMENT PROVIDES A PRE-INDICTMENT RIGHT FOR THE TARGET OF A SEARCH TO ACCESS THE WARRANT AFFIDAVIT.

The vast majority of courts to consider the issue, rightly, "have recognized that those individuals whose property is the subject of a search pursuant to [a] warrant have a pre-indictment right of access to search warrant materials, including the supporting affidavit, grounded

in the Fourth Amendment." *In re Searches & Seizures*, Nos. 08-SW-0361 DAD to 08-SW-0364 DAD, 2008 WL 5411772, at *3 (E.D. Cal. Dec. 19, 2008) (citing authority); *see Cactil, LLC v. United States*, No. 3:24-cv-01270-LL-AHG, 2024 WL 4139642, at *3 (S.D. Cal. Sept. 10, 2024) (citing, and "find[ing] persuasive," numerous decisions that have done so); *14416 Coral Gables Way,* 946 F. Supp. 2d at 419 (citing authority); *Searches & Seizures*, 2008 WL 5411772, at *3 n.4 ("far fewer" courts have found no right of access). A property owner's unique and "abiding interest in challenging the reasonableness of the government's invasion . . . is simply not addressed by the common law right of access." *Search Warrants 2004*, 353 F. Supp. 2d at 590.

### A. Access to the Affidavit Is Essential to Both a Target's Fourth Amendment Rights and the Purpose of the Fourth Amendment.

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

U.S. Const. amend. IV. "Implicit in that language is the public's right to challenge both the reasonableness of the search and the degree to which

the warrant was supported by probable cause." *Search Warrants 2004*, 353 F. Supp. 2d at 588.

"It is a basic principle of Fourth Amendment law that searches and seizures inside a home without a warrant are presumptively unreasonable." *Payton v. New York*, 445 U.S. 573, 586 (1980) (quotation omitted). But that principle does not make every search with a warrant reasonable. *See Groh v. Ramirez*, 540 U.S. 551, 558 (2004) ("[T]he warrant was so obviously deficient that we must regard the search as 'warrantless' within the meaning of our case law."). Some warrants are "plainly invalid." *Id.* at 557. Some applications manifestly should not have been granted. *See* Miguel F.P. de Figueiredo, Brett Hashimot & Dane Thorley, *Unwarranted Warrants? An Empirical Analysis of Judicial Review in Search and Seizure*, 138 Harv. L. Rev. 1959, 1962 nn.7-8, 2035-37 (2025) (providing examples); *United States v. Lyles*, 910 F.3d 787, 794-95 (4th Cir. 2018) (describing an "astoundingly broad warrant" that authorized seizure of all items in a home, and of all persons there, based on three marijuana stems found in the trash); *United States v. Griffith*, 867 F.3d 1265, 1270-71 (D.C. Cir. 2017) (describing a warrant that "authorized the wholesale seizure of all electronic devices discovered

in the apartment" based on the unsupported possibility that one of the occupants owned a cell phone).

Others errors are more subtle. Applications can be supported by an affidavit that appears sufficient but, in fact, is misleading or even false. *See United States v. Somerlock*, 602 F. Supp. 3d 791, 819-23 (D. Md. 2022) (finding significant factual misstatement that target of the search could have refuted); Jacob Sullum, *A Houston Drug Cop's Murder Conviction Highlights the Potentially Deadly Consequences of 'Testilying'*, Reason (Oct. 2, 2024), https://reason.com/2024/10/02/a-houston-drug-cops-murder-conviction-highlights-the-potentially-deadly-consequences-of-testilying/;[2] *see also, e.g.*, *United States v. Lull*, 824 F.3d 109, 118 (4th Cir. 2016) (intentional omission that confidential informant had stolen from the sheriff's office "prevented a neutral magistrate from being able to accurately assess the reliability and the veracity, and thus the significance, of the informant's statements").

Such mistakes are not surprising. Magistrates must review many warrant applications, often in a hurry. De Figueiredo *et al.* at 1979-81.

[2] The concept of 'testilying' is well established in legal scholarship. *See* Oren Bar-Gill & Barry Friedman, *Taking Warrants Seriously*, 106 Nw. Univ. L. Rev. 1609, 1624-25 (2012).

Some magistrates scrutinize applications far more rigorously than others. *See id.* at 2015-16, 2029-30 (finding that review time and approval rates vary by judge). One study found that the overwhelming majority of warrant applications are approved. *Id.* at 2026-28. It is to minimize those errors, and mitigate their consequences, that those subjected to a search can challenge it afterwards. Yet, "[w]ithout the right of access to the affidavit on which the search warrant was based, the search subject could *never* make such a challenge." *Search Warrants 2004*, 353 F. Supp. 2d at 588.

### ***1. Access to the Affidavit Is Necessary to Recover Wrongfully Seized Property.***

The right to be secure against unreasonable seizures necessarily implies the right to recover property that was unreasonably seized. *See, e.g.*, *Weeks v. United States*, 232 U.S. 383, 398 (1914) ("That papers wrongfully seized should be turned over to the accused has been frequently recognized . . . ."), *overruled in part by Elkins v. United States*, 364 U.S. 206 (1960). But the period between the search and the government's conclusion of the investigation may be long. "A delay of several years is not uncommon in such investigations." *Search Warrants 2004*, 353 F. Supp. 2d at 591 (citing David Horan, *Breaking the Seal on*

*White-Collar Criminal Search Warrant Materials*, 28 Pepp. L. Rev. 317, 331 (2001)). The target may need seized property long before then. *See* Horan at 332-33 (describing the practical hardships of operating a business after seizure, which may require layoffs or even amount to an "economic death penalty"); *Steve Jackson Games, Inc. v. U.S. Secret Serv.*, 816 F. Supp. 432, 438 (W.D. Tex. 1993) ("The failure . . . to—promptly—return the seized products . . . cannot be justified and unquestionably caused economic damage to the corporation."), *aff'd*, 36 F.3d 457 (5th Cir. 1994). The need to recover property is particularly acute today, given the significance of ubiquitous devices such as cell phones and computers. *See, e.g.*, *Lindell v. United States*, 82 F.4th 614, 622 (8th Cir.) (describing how the "unique nature" of such devices "implicates privacy concerns far beyond those of other items"), *reh'g denied*, 2023 WL 8181110 (8th Cir. 2023), *cert. denied*, 144 S. Ct. 1350 (2024).

"A person aggrieved by an unlawful search and seizure of property" may seek the return of that property. Fed. R. Crim. P. 41(g).[3] Practically,

---

[3] Although this right is effected through Rule 41(g), it is bestowed by the Fourth Amendment. *See Weeks*, 232 U.S. 383 (ordering return of unreasonably seized property before enactment of Rule 41(g)). Indeed, the target of a search may be able to move for return of property independently of Rule 41(g). *See Mr. Lucky Messenger Serv., Inc. v.*

however, "[t]he affidavit must be seen to be effectively challenged." *Up North Plastics*, 940 F. Supp. at 233. Those "whose property is seized pursuant to a search warrant, cannot decide whether [to] make a motion under Rule 41 unless they know the basis upon which the search warrant was issued." *Ibid*. Neither could they meet their burden under Rule 41(g). *See, e.g.*, *In re Grand Jury Subpoena to Roe & Roe, Inc.*, 49 F. Supp. 2d 451, 453 (D. Md. 1999) (placing burden on the movant). One could not allege – let alone prove – that one was "aggrieved by an unlawful search," Fed. R. Crim. P. 41(g) (emphasis added), or address "whether the Government displayed a callous disregard for the constitutional rights of the movant." *United States v. Johnson*, 683 F. App'x 241, 248 (4th Cir. 2017) (quoting *Ramsden v. United States*, 2 F.3d 322, 325 (9th Cir. 1993)).

Therefore, "a target has a constitutional right to review the affidavit to learn the basis for the intrusive government action and evaluate the filing of a Rule 41[g] motion[.]" *8420 Ocean Gateway*, 353 F. Supp. 2d at 581 n.5.

---

*United States*, 587 F.2d 15, 16-17 (7th Cir. 1978) ("The more typical action for return of seized property arises under Rule 41(e) . . . . Courts, however, have additionally recognized an independent cause of action for return of property . . . .").

### *2. Access to the Affidavit Is Also Necessary to Prevent and Deter Repetition of Unreasonable Searches.*

Access to the affidavit is necessary to prevent further unjustified searches. In some instances, the affidavit may reveal legal steps that can be taken. *See Steve Jackson Games*, 816 F. Supp. at 443 (because the basis for the search was sealed, "no Plaintiff was on notice that . . . Steve Jackson Games, Incorporated could move to quash or modify the order or eliminate or reduce any undue burden on it by reason of the order"). In others, it may provide grounds to challenge the further search of seized devices, which "undoubtedly" results in "an overbroad capture of information." *Lindell*, 82 F.4th at 622. Even when neither is the case, the target may be able to convince the government that any suspicions are wrong, or to voluntarily cooperate with the government against the real suspect.

At times, it may become necessary to seek relief from a court. *See Ross v. Meese*, 818 F.2d 1132, 1134-35 (4th Cir. 1987) (courts possess authority to enjoin violations of the Fourth Amendment); *624 NE 2nd Street*, 2019 WL 13074677, at *7-9 (holding that the target of a search can challenge that search before indictment). Otherwise, the government

> could seek and obtain multiple search warrants against the same target, seize any amount of property each time, search the property in whatever manner it chooses, and do so over an indefinite period of time, and the target could not seek judicial relief . . . unless and until the government chooses to indict the target.

*624 NE 2nd Street*, 2019 WL 13074677, at *8. Access to the warrant affidavit would be necessary to seek any such relief. Similarly, to the extent that civil damages are available, access to the affidavit is necessary to plead "more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Beyond the individual case, access to the warrant is necessary to deter other unreasonable searches. Suppression of evidence is a necessary component of deterrence, but to rely exclusively on suppression has been widely recognized as inadequate, perhaps even counterproductive. *See* de Figueiredo *et al.* at 1974-75 (motions to exclude evidence rarely succeed, which may encourage wrongful warrant approvals); Oren Bar-Gill & Barry Friedman, *Taking Warrants Seriously*, 106 Nw. Univ. L. Rev. 1609, 1622-26 (2012) (same). "For instance, even the most law-abiding citizen has a very tangible interest in limiting the circumstances under which the sanctity of his home may be broken by official authority," *Camara v. Municipal Ct. of S.F.*, 387 U.S. 523, 530-31

(1967), but the exclusionary rule would be no consolation to one who is never charged with a crime.

Neither would exclusion suffice to prevent wrongful convictions. Those charged with a crime would face the loss of evidence between the search and the indictment, followed by the risk of pretrial detention – bringing with it a loss of income and reduced ability to participate in one's defense – before they could challenge the search. These dangers would greatly increase the likelihood of an erroneous guilty verdict or a coercive plea deal, even if the defendant were totally innocent.

"The tendency of those who execute the criminal laws of the country to obtain conviction by means of unlawful seizures and enforced confessions . . . should find no sanction in the judgments of the courts[.]" *Weeks*, 232 U.S. at 392. Yet, to law enforcement, the benefits of unlawful searches and seizures often outweigh the risk of suppression. The prospect of revealing the basis for even a fruitless search, and of litigating reasonableness prior to indictment, provides a counter-incentive. *See* de Figueiredo *et al.* at 1974-75 ("Judges are likely unaware of warrant 'hit rates' . . . and thus are not able to update their priors on the probability of any given search or seizure being successful.").

### *3. Access to the Affidavit May Be Necessary to Mitigate Other Harms.*

Under certain circumstances, the target may be able to take other steps to mitigate the harms caused by the search. If those circumstances do not apply, a court is able to restrict use of the affidavit or otherwise impose lesser alternatives to sealing. *See* Argument III.A.1, *infra*.

First, the government's decision to search someone's property "itself prompts suspicion and damages the reputation of the subject." *Search Warrants 2004*, 353 F. Supp. 2d at 590; *see* Horan at 322 ("[A] federal search often turns a business upside down, particularly because large-scale searches often draw media attention and shut down the operations of a company for at least the duration of the search."). It may sometimes be appropriate and possible for the target to protect that reputation.

Second, given the delay between the search and any possible indictment, the target may need to take steps to preserve evidence of innocence. *See Stronger v. California*, 539 U.S. 607, 631 (2003) (recognizing the need to "preserve evidence of innocence," because "[m]emories fade, and witnesses can die or disappear"); *United States v. Charles*, 240 F. Supp. 2d 488, 490 (M.D.N.C. 2002) ("People do not keep records indefinitely, especially when there is no apparent purpose to do

so. . . . In the meantime, memories fade and [so does documentary evidence]."). By contrast, knowing that there is no such need may avert payment of unnecessary legal fees.

Third, knowing the basis for the search will often reduce the target's anxiety. *Steagald v. United States*, 451 U.S. 204, 226 (1981) (Rehnquist, J., dissenting) (a warrant "assures the occupants that the police officer is present on official business"); *cf., e.g.*, *In re Search of L.S. Starrett Co,* No. 1:02M137, 2002 WL 31314622, at *6 (M.D.N.C. Oct. 15, 2002) ("Such strong-arm actions will appear chilling to some . . . . Such anxiety can be best abated by the release of information showing that the actions are authorized and justified."). "While the government is free to lawfully exercise its power to execute search warrants, the persons against whom that awesome power is unleashed at least have the right to discover the basis for the exercise." *Search Warrants 2004*, 353 F. Supp. 2d at 590.

### B. Historical Practice Further Supports Appellant's Right to Access the Search Warrant Affidavit.

Many states require that a search warrant affidavit be disclosed to the target of the search, or even to the general public. Lynn B. Oberlander, Note, *A First Amendment Right of Access to Affidavits in Support of*

*Search Warrants*, 90 Colum. L. Rev. 2216, 2235 & nn.106-108 (1990). Those requirements are not a legislative whim. They reflect a centuries-long history of access to warrant affidavits after the search. As recently as 1972, it could be assumed that "[a] person who wishes to challenge the validity of a search warrant has access to the affidavits upon which the warrant was issued." Fed. R. Crim. P. 41, Advisory Committee Notes to 1972 Amendments. This long history illustrates the Fourth Amendment right of a target to access the warrant affidavit.

#### ***1. At the Founding, Wrongful Searches Were Prevented Not Only by Warrants but Also by Suits for Trespass. These Suits Were Brought by Targets of a Search, Who Were Able to Access the Reasons Supporting Probable Cause.***

For at least half of American history, even without an indictment, "targets of searches could challenge the probable cause determinations [underlying the search warrant], indicating that they had access to the affidavit or its analogues." Oberlander at 2228.

Under common law, the remedy for a wrongful search was not exclusion of evidence or any action by the state. It was a private suit for trespass, by the target of the search. David E. Steinberg, *An Original Misunderstanding: Akhil Amar and Fourth Amendment History*, 42 San

Diego L. Rev. 227, 252-53 (2005); *see also* David Gray, *Fourth Amendment Remedies as Rights: The Warrant Requirement*, 96 B.U. L. Rev. 425, 468 (2016) ("The combination of trespass actions, citizens' ability to obtain specific warrants, and the common law prohibition on general warrants were sufficient in the late eighteenth century. . . ."). Many of those suits "are widely recognized as signal events in the history of the Fourth Amendment." Gray at 453-54; *see, e.g.*, Steinberg at 258-61. This doctrine was widely understood at the time of the founding and continued, at least, until the beginning of the twentieth century. *See* Thomas Y. Davies, *Recovering the Original Fourth Amendment*, 98 Mich. L. Rev. 547, 588 n.99 (1999); Oberlander at 2233 & n.96.

The function of a warrant in this regime was to insulate the executing officers from liability. But not any warrant constituted a defense: in at least one case, a warrant that was constitutionally invalid was not admissible to justify a search. *Sandford v. Nichols*, 13 Mass. 286, 288-89 (1816). Moreover, only the officers were protected. Warrants did not preclude liability for the search, they merely shifted it to the complainant or magistrate who was ultimately responsible. Davies at 589, 652 n.294; Oberlander at 2233 & n.96; *see also Sandford*, 13 Mass. at 288

("If such a magistrate shall proceed unlawfully in issuing the process, he, and not the executive officer, will be liable for the injury . . . ."). In other words, an essential component of these suits was challenging the issuance of the warrant.

Furthermore, plaintiffs were often required to prove that the warrant was sworn or issued without probable cause. Oberlander at 2233 & n.96; *see* Davies, 654 n. 297 (a justice of the peace could be sued "if he grant any such Warrant groundlessly and maliciously, without such probable Cause, as might induce a candid and impartial Man to suspect the Party to be guilty" (quoting 2 Serjeant William Hawkins, *Pleas of the Crown* 84-85, 135 (6th ed. 1787)). Thus, they required access to the materials on which probable cause was found. *See* Oberlander at 2232-2233.

Appellant is not suggesting that the Court should reinstate the trespass scheme that existed at common law. That suggestion "would be a mistaken literalism that ignores the purposes of a historical inquiry." *Tennessee v. Garner*, 471 U.S. 1, 13 (1985). Rather, history's lesson is that the Fourth Amendment originally presupposed two stages to deter and prevent a wrongful search: first, the magistrate could deny a warrant;

second, even if the warrant issued, those subjected to the search could review the purported justification to vindicate their rights in court.

### 2. *Search Warrant Affidavits Have Traditionally Been Accessible Following Execution of the Search. Sealing Was Reserved for Exceptional Circumstances. It Has Now Become a Matter of Course.*

Since the Fourth Amendment was enacted, "[c]rime has changed, as have the means of law enforcement . . . ." *Steagald*, 451 U.S. at 217 n.10. Those changed means include so many layers of opacity, even in routine cases, that modern searches have become as impenetrable as those decried by the framers. *See* James Otis, *Against Writs of Assistance* (1761) (opposing searches into which "no man, no court can inquire"), https://www.sas.upenn.edu/~cavitch/pdf-library/Otis_Against%20Writs.pdf.[4]

[4] Otis' speech is widely recognized as influential in the development of the Fourth Amendment. *See United States v. Rabinowitz*, 339 U.S. 56, 69-70 (1950) (Frankfurter, J., dissenting) ("The clue to the meaning and scope of the Fourth Amendment is John Adams' characterization of Otis' argument . . . that 'American independence was then and there born.'" (quoting 10 John Adams, *The Works of John Adams, Second President of the United States* 247 (1856))), *overruled by Chimel v. California*, 395 U.S. 752 (1969); *see also, e.g.*, Gray at 454 n.169 (referring to Otis' "famous argument in the writs of assistance cases"); Davies at 561 n.20 ("The most important aspect of the case is James Otis's argument, during the first hearing, that such writs were illegal.").

While search warrants applications have long been kept secret prior to execution, the same was not true after the search had taken place. Search warrant materials, including the affidavits, "have been historically considered to be open to inspection by the public." *In re Search Warrant for Secretarial Area Outside Office of Gunn*, 855 F.2d 569, 573 (8th Cir. 1988); *see* Oberlander at 2232-35 (describing the historical availability of search warrants and reasons underlying them). Upon completion of the search, those materials were "routinely filed with the clerk of court without seal." *Office of Gunn*, 855 F.2d at 573; *see Balt. Sun Co. v. Goetz*, 886 F.2d 60, 65 (4th Cir. 1989) ("all papers relating to the search warrant" must be filed with the court and, generally, made available even to the public); Horan at 348 & n.171, 349 n.173 (describing routine court disposition of search warrant affidavits after execution); *see also L.S. Starrett Co.*, 2002 WL 31314622, at *5 (recognizing the "major consequences" of "an approach [that] would likely lead to the routine sealing of all search warrants and affidavits"). Indeed, "prior to 1972, a federal search warrant . . . itself informed the target of the reason for the search." Horan at 348 (citing Fed. R. Crim. P. 41, Advisory Committee Notes to 1972 Amendments).

There have, of course, been exceptions. But sealing "has traditionally been considered 'an extraordinary action' which was necessarily supported by a showing of 'real harm.'" *Search Warrants 2004*, 535 F. Supp. 2d at 589 (quoting 3A Charles A. Wright et al., *Federal Practice & Procedure, Criminal* § 672 at 333 (3d ed. 2004)). Recently, however, "sealing search warrant affidavits and materials has become a routine matter, and the government's required showing of harm has become dramatically less demanding." *Ibid.* (citing Horan at 324-25). [redacted]

Furthermore, the nature of the supporting oaths has changed significantly. At the time of the Founding, warrants were sworn to by private citizens. *See* Gray at 467 ("A citizen might swear out a warrant . . . ."); Otis, *Against Writs of Assistance* ("But in more modern books you will find only special warrants . . . in which the <u>complainant</u> has before sworn that he suspects <u>his</u> goods are concealed." (emphasis added)). Now, they are sworn to by law enforcement officers. Any statements by private citizens – often paid informants or criminals seeking to reduce their own liability – are conveyed solely through the

affiant. Even those citizens' identities are frequently hidden. This game of telephone not only removes the warrant process even further from the public, it also hinders magistrates' ability to detect bias or self-interest. It courts omission, miscommunication, or outright deception. *See, e.g.*, *Yassin v. Weyker*, 39 F.4th 1086, 1088 (8th Cir. 2022) ("[T]he affidavit was riddled with inaccuracies."), *cert denied*, 143 S. Ct. 779 (2023).

The constitutional "prohibition against 'unreasonable searches and seizures' must be interpreted 'in light of contemporary norms and conditions.'" *Steagald*, 451 U.S. at 217 n.10 (quoting *Payton*, 445 U.S. at 591 n.33). Such an interpretation, in light of a government secrecy that has far exceeded the anticipations of the framers, calls for a constitutional right to access the warrant affidavit.

### C. The Court Should Not Follow the Cursory and Unpersuasive Reasoning of *EyeCare Physicians*, Which Failed to Address the Reasons Underlying a Fourth Amendment Right of Access.

Although the courts finding no right of access are "far fewer" than those that have, *Searches & Seizures*, 2008 WL 5411772, at *3 n.4, they include a federal court of appeals. *In re EyeCare Physicians of Am.*, 100 F.3d 514, 517 (7th Cir. 1996). That court reached its conclusion with next to no reasoning, based on a deeply flawed theory of constitutional

interpretation. This Court should follow the reasoning of the district courts that have rejected *EyeCare Physicians*. *See Searches & Seizures*, 2008 WL 5411772, at *3 & n.4 (declining to follow the minority of cases); *Search Warrants 2004*, 353 F. Supp. 2d at 588 (explicitly disagreeing with *EyeCare Physicians*); *see also Cactil*, 2024 WL 4139642, at *3-4 (citing *EyeCare Physicians* but finding a right to access warrant affidavits under the Fourth Amendment).

*EyeCare Physicians* fails under its own terms: it "is conclusory at best (with respect to the applicability of the Fourth Amendment) and conspicuous for its lack of analysis." 100 F.3d at 517. Its discussion of the Fourth Amendment consists of one short paragraph, with too little reasoning even for a block quotation: "[T]he text of that Amendment does not address, even implicitly, the problem of lack of access to sealed search warrant affidavits. The Warrant Clause of the Fourth Amendment circumscribes the issuance of warrants, but does not address access to the affidavits employed to support them." *Ibid.*

This reasoning, however, is wrong. The right to access the affidavit is very much "implicit in [the] language" of the Fourth Amendment. *Search Warrants 2004*, 353 F. Supp. 2d at 588. The Seventh Circuit

assumed that the Fourth Amendment had no relevance after a warrant issues. But that question-begging assumption is based on a rigid and narrow reading of the Constitution that is incompatible with binding precedent. It is well established that the Constitution does not "partake of the prolixity of a legal code." *M'Culloch v. Maryland*, 17 U.S. 316, 407 (1819) (Marshall, C.J.). It is not feasible for the Fourth Amendment to describe precisely when a search or seizure is reasonable, to identify all the circumstances in which a warrant is required, or to describe the entire procedure for obtaining one. Most importantly, the Amendment cannot detail every means by which its mandate is enforced. Such practical limitations do not mean that it "does not address" those subjects.

Under the Seventh Circuit's reading, the Fourth Amendment would not address suppression of wrongfully-seized evidence. *See, e.g.*, *Elkins*, 364 U.S. at 223 ("[E]vidence obtained by state officers during a search which . . . violated the defendant's immunity from unreasonable searches and seizures under the Fourth Amendment is inadmissible . . . in a federal criminal trial."). It would not address the return of wrongfully-seized property. *See Weeks*, 232 U.S. 383; Fed. R. Crim. P. 41(g). It would not address any limits on the disposition of property once seized. *See*

*United States v. Pratt*, 915 F.3d 266, 271-73 (4th Cir. 2019) (holding extended retention of a phone unreasonable); *see also, e.g.*, *Lindell*, 82 F.4th at 621 ("The government's continued retention of the phone and all its data raises constitutional issues distinct from the lawfulness of the search warrant or its execution."). It would not address the right to challenge the truth of an affidavit or the breadth of a resulting warrant. *See Lyles*, 910 F.3d 787 (affirming suppression of evidence based on warrant's overbreadth); *Lull*, 824 F.3d at 115 (citing authorization to challenge factual basis of affidavit). It would not even require the magistrate deciding the application to be "neutral and detached." *Shadwick v. City of Tampa*, 407 U.S. 345, 350 (1972). Such a reading is contradicted by controlling authority.

Furthermore, *Eyecare Physicians* failed to engage with the reasons supporting appellant's right. The court did not touch upon the historical support for the right to access the warrant affidavit, Argument I.B, *supra*, and addressed only a single decision finding a Fourth Amendment right. 100 F.3d at 517 & n.3 (*citing In re Search Warrants Issued August 29, 1994*, 889 F. Supp. 296 (S.D. Ohio 1995) (*Search Warrants 1994*)). It did not – and could not – address more recent caselaw on the issue, such as

"the in-depth discussion" of *Search Warrants 2004*, which courts have "[found] particularly instructive". *Cactil*, 2024 WL 4139642, at *3; *see also 624 NE 2nd St.*, at *8 (repeatedly citing *Search Warrants 2004*); *Searches & Seizures*, 2008 WL 5411772, at *3-4 (same). The court's treatment of supportive case law was equally cursory: it did not cite a single case to support its position.

## II. BECAUSE APPELLANT HAS A CONSTITUTIONAL RIGHT TO ACCESS THE SEARCH WARRANT AFFIDAVIT, THE COURT SHOULD REVIEW THE MOTION TO UNSEAL *DE NOVO*.

A right of access under the Fourth Amendment is a constitutional right of access. Therefore, it must provide at least as much protection as the First Amendment. *See Search Warrants 2004*, 353 F. Supp. 2d at 587 ("The right of a private citizen under the Fourth Amendment can be no less than the rights afforded to the press under the First Amendment . . . ."); *see also Va. Dep't of State Police*, 386 F.3d at 575 (describing the right of access under the First Amendment). "The distinction between the rights of access afforded by the common law and the [Constitution] is 'significant,'" with the Constitution offering greater access. *Va. Dep't of State Police*, 386 F.3d at 575 (quoting *Balt. Sun Co.*, 866 F.2d at 64). A constitutional right of access "can be denied only by

proof of a compelling governmental interest and proof that the denial is narrowly tailored to serve that interest." *Balt. Sun Co.*, 886 F.2d at 64 (quotation omitted). When constitutional access rights are at stake, this Court reviews sealing decisions *de novo*. *See Doe v. Public Citizen*, 749 F.3d 246, 269 (4th Cir. 2014); *Va. Dep't of State Police*, 386 F.3d at 575. If the Court finds that appellant has a Fourth Amendment right to access the warrant affidavit, it should uphold that right with a thorough *de novo* review.

If the Court finds that the Fourth Amendment does not apply, whether to unseal the affidavit lies within the district court's sound discretion. *Balt. Sun Co.*, 886 F.2d at 64. Even so, that discretion is not unlimited. The district court must follow the correct procedures, weigh the competing interests, and deny access if – and only if – doing so is "essential". *Id.* at 65 (quotation omitted); *see* Argument III.A, III.A.2, III.B, *infra*.

## III. THE DISTRICT COURT FAILED TO FOLLOW THE APPROPRIATE PROCEDURES TO DETERMINE WHETHER THE GOVERNMENT'S INTEREST IN SEALING THE AFFIDAVIT SUFFICIENTLY OUTWEIGHED APPELLANT'S INTEREST IN ACCESS.

Regardless of the right of access at issue, the district court must

> weigh the appropriate competing interests under the following procedure: it must give the public notice of the request to seal and a reasonable opportunity to challenge the request; it must consider less drastic alternatives to sealing; and if it decides to seal it must state the reasons (and specific supporting findings) for its decision and the reasons for rejecting alternatives to sealing.

*Va. Dep't of State Police*, 386 F.3d at 576; *see Balt. Sun Co.*, 886 F.2d at 66 (vacating decision to seal "[b]ecause . . . the district court did not follow acceptable procedures").

The district court denied the motion to unseal on the grounds that [redacted] Appellant is unable to challenge the facts underlying that decision. That sentence is not a concession that the decision was correct. It is a literal statement: those facts were submitted *ex parte* and appellant does not know what they were. Therefore, he can only ask the Court to scrutinize the procedures employed below and the

asserted justification for sealing, apply the appropriate standard of review, and either reverse the district court or vacate its decision and remand.

### A. The District Court Failed to Justify Its Decision to Seal the Affidavit.

[redacted] "But conclusory assertions are insufficient to allow review; specificity is required." *Balt. Sun Co.*, 886 F.2d at 66 (vacating denial of a motion to unseal search warrant materials based on the unsupported conclusion "that the public interest in the investigation of crime outweighed [the movant's] interest in access prior to return of the indictments"); *see also Sealed Search Warrants*, 868 F.3d at 390 ("Though the district court purported to conduct this case-specific analysis, its findings evade meaningful appellate review because they are too conclusory and lack detail."). If the Court is unable to understand the district court's reasoning, it should vacate the decision and remand for consideration under the appropriate standard.

To the extent the Court understands that reasoning, appellant asks the Court to ensure that it meets the strict criteria for sealing. Appellant concedes that sealing is sometimes necessary to protect an ongoing

criminal investigation, but "not every release of information . . . will necessarily affect the integrity of the investigation." *Va. Dep't of State Police*, 386 F.3d at 579 (affirming an order to unseal many investigative documents); *see also Balt. Sun Co.*, 886 F.2d at 66 (requiring findings specific to investigation).

#### *1. A Constitutional Right of Access Can Be Overcome Only When the Government Shows a Compelling Interest, Supported by Case-Specific Facts, That Cannot Be Satisfied Through Less Intrusive Means.*

When a constitutional right is at stake, "a district court may restrict access 'only on the basis of a compelling governmental interest, and only if the denial is narrowly tailored to serve that interest.'" *Va. Dep't of State Police*, 386 F.3d at 575 (quoting *Stone v. Univ. of Md. Med. Sys. Corp.*, 855 F.2d 178, 180 (4th Cir. 1988)); *see 8420 Ocean Gateway*, 353 F. Supp. 2d at 579-81 (applying *Balt. Sun Co.* to search warrant affidavit). Numerous district courts have found that this "compelling interest" standard applies to search warrant affidavits. *Cactil*, 2024 WL 4139642, at *4; *14416 Coral Gables Way*, 946 F. Supp. 2d at 419-20; *In re Searches & Seizures*, 2008 WL 5411772, at *4; *Search Warrants 2004*, 353 F. Supp. 2d at 587-88; *Up North Plastics*, 940 F. Supp. at 233-34; *Search Warrants 1994,* 889 F. Supp. at 299.

Those courts have invariably found that criminal investigations are not *per se* too sensitive to bear disclosure. *See Cactil*, 2024 WL 4139642, at *4 ("[T]he fact that the government's investigation is still ongoing . . . is insufficient to meet the Government's burden."); *Searches & Seizures*, 2008 WL 5411772, at *4 ("[G]eneral and conclusory concerns, potentially present in any investigation, are insufficient to meet the government's burden of demonstrating a compelling government interest in continued sealing."); *14416 Coral Gables Way*, 946 F. Supp. 2d at 421 ("[T]he government has provided no evidence specific to this case beyond a general concern that could justify the sealing of affidavits in every criminal investigation."); *8420 Ocean Gateway*, 353 F. Supp. 2d at 583 ("If the pendency of the criminal investigation here constitutes a compelling reason then essentially any investigation would."); *Up North Plastics*, 940 F. Supp. at 234 ("The government's claim of a compelling need to keep the court's records secret amounts to nothing more than conclusory allegations which would require the sealing of search warrants in nearly every criminal investigation.").

The burden of showing the need to seal "rests on the party seeking to restrict access, and that party must present specific reasons in support

of its position." *Va. Dep't of State Police*, 386 F.3d at 575. Generic concerns – such as "that unsealing of the supporting affidavits would prematurely reveal [the government's] theory of the case and the direction of the investigation, thereby likely obstructing that investigation in its early stages" – are thus insufficient. *Searches & Seizures*, 2008 WL 5411772, at *4.

Rather, the government must provide "evidence specific to this case" that the risk of disclosure is intolerably high. *14416 Coral Gables Way*, 946 F. Supp. 2d at 421; *see Search Warrants 2004*, 353 F. Supp. 2d at 591-92 (finding no compelling interest when "the government's general allegations of possible witness 'coaching,' the government's fears concerning discovery of their 'novel' legal theories, and the concern over exposure of other potential targets, are all unfounded given the facts of this case"). Such a risk must be based on the nature and stage of the investigation, the role of witnesses, the results of the search, and the identity of the target. *See 14416 Coral Gables Way*, 946 F. Supp. 2d at 420-28 (considering all of these factors at length); *8420 Ocean Gateway*, 353 F. Supp. 2d at 582 (finding little risk when "the investigation is well underway" in light of "the nature of [the target's] profession and the

nature of the documents seized and the plain statutory and regulatory requirements"); *Search Warrants 1994*, 889 F. Supp. at 299-300 (finding no legitimate basis for sealing when the investigation is neither "in the preliminary stages" nor "part of some broader investigation", "there are no wiretaps that have not been terminated," and "there are no informants whose lives would be endangered").

For example, the government cannot merely assert the need for witness confidentiality, but must "show a realistic danger of physical harm, harassment, or intimidation." *14416 Coral Gables Way*, 946 F. Supp. 2d at 426; *see id.* at 425-26 (comparing risks faced by different types of witnesses and informants); *compare 8420 Ocean Gateway*, 353 F. Supp. 2d at 582 (unsealing when "the affidavit certainly provides no hint of physical danger to [informants], or even harassment or intimidation"), *and Up North Plastics*, 940 F. Supp. at 234 (unsealing when the property owner contends that investigation "doesn't involve a serious threat to any likely witnesses, either by way of harassment, threats, or intimidation"), *with Cactil*, 2024 WL 4139642, at *4 (maintaining seal when, among numerous other factors, actual and suspected informants would be at risk).

Furthermore, even when a compelling interest is present, sealing is an appropriate solution only when "narrowly tailored" to that interest. *Va. Dep't of State Police*, 386 F.3d at 575. Narrow tailoring requires "that no less restrictive means, such as redaction, are available." *14416 Coral Gables Way*, 946 F. Supp. 2d at 428 (quoting *Search Warrants 2004*, 353 F. Supp. 2d at 592). Legal restrictions on the target's use or disclosure of the affidavit may suffice. If an inescapably compelling interest truly necessitates withholding information, "such an interest may easily be satisfied by redacting [that information], rather than sealing the entire affidavit." *Id.* at 426.

#### ***2. Even Under the Common Law, Sealing Must Be Essential to Preserve Higher Values and Narrowly Tailored to Serve that Interest.***

Even if this Court finds that appellant has no right under the Fourth Amendment, it may not abdicate its review of the district court's decision. "The common law presumes a right . . . to inspect and copy all judicial records and documents," unless "countervailing interests heavily outweigh the public interests in access, and the party seeking to overcome the presumption bears the burden of showing some significant interest that outweighs the presumption." *Va. Dep't of State Police*, 386

F.3d at 575 (cleaned up) (emphasis added). Thus, a denial of access is appropriate only "when sealing is essential to preserve higher values and is narrowly tailored to serve that interest." *Balt. Sun Co.*, 886 F.2d at 65-66. Appellant asks the Court to ensure that the district court did not abuse its discretion in applying these standards.

### B. The District Court Failed to Give the Public Notice of the Government's Request to Seal.

Finally, regardless of the proper standard of review, "a court must first give the public notice of a request to seal and a reasonable opportunity to challenge it." *Stone*, 855 F.2d at 181 (citing *In re Knight Pub. Co.*, 734 F.2d 213, 235 (4th Cir. 1984)). The district court offered no such notice. It "ordered sealed the entire record without indicating exactly what that record contained." *Ibid.* Prior to this appeal, the very existence of the sealing order was unknown to the public. A search for the underlying case on PACER case locator does not reveal it, even under a pseudonym, and a search for the docket number on the district court ECF returns only "This case is SEALED." Therefore, at the least, the district court's decision should be vacated and remanded so that the public may seek to request unsealing.

## CONCLUSION

If the Court finds the record insufficient to permit review, it should vacate the denial of appellant's motion to unseal the search warrant affidavit, and should remand for reconsideration under the demanding and case-specific standard required by the Fourth Amendment. If the Court finds the record sufficient to permit review, it should reverse the decision and grant the motion to unseal; or, in the alternative, it should vacate and remand for reconsideration under the Fourth Amendment standard, once the public has also had an opportunity to request unsealing.

## REQUEST FOR ORAL ARGUMENT

Appellant respectfully asks the Court for oral argument on the issues raised in this appeal.

Respectfully Submitted,

/s/ Jonathan Knowles

Jonathan Knowles
BURNHAM & GOROKHOV, PLLC
1634 I Street NW, Suite 575
Washington, DC
(347) 273-1828
‘ Jonathan@BurnhamGorokhov.com

*Counsel for Appellant*

# CERTIFICATE OF COMPLIANCE

This brief complies with type-volume limits because, excluding the parts of the document exempted by Fed. R. App. R. 32(f) (cover page, disclosure statement, table of contents, table of citations, statement regarding oral argument, signature block, certificates of counsel, addendum, attachments):

[ X ] this brief contains [*8,311*] words.

[ ] this brief uses a monospaced type and contains [state the number of] lines of text.

This brief complies with the typeface and type style requirements because:

[ X ] this brief has been prepared in a proportionally spaced typeface using [*Microsoft Word 2021*] in [*14pt Century Schoolbook*]; or

[ ] this brief has been prepared in a monospaced typeface using [*state name and version of word processing program*] with [*state number of characters per inch and name of type style*].

Dated: December 19, 2025

/s/ Jonathan Knowles
*Counsel for Appellant*

## CERTIFICATE OF FILING AND SERVICE

I hereby certify that on this 19th day of December, 2025, I caused the redacted version of this Appellant's Opening Brief to be filed electronically with the Clerk of the Court using the CM/ECF System, which will send notice of such filing to counsel for the United States of America, respondent-appellee, at the following address:

Jacqueline R. Bechara, Esq.
OFFICE OF THE UNITED STATES ATTORNEY
2100 Jamieson Avenue
Alexandria, VA 22314
(703) 299-3819
jacqueline.bechara@usdoj.gov

I further certify that on this 19th day of December, 2025, with prior written consent, I served the unredacted version of Appellant's Opening Brief and the Sealed Joint Appendix on counsel for the appellee by email to the above address.