IN THE
UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

---

No. 25-4496

---

IN THE MATTER OF THE SEARCH OF:
UNDER SEAL

---

Appeal from the United States District Court
for the Eastern District of Virginia
at Alexandria
*The Honorable Michael S. Nachmanoff, District Judge*

---

# BRIEF OF THE UNITED STATES

---


Todd W. Blanche
Deputy Attorney General

Jacqueline R. Bechara
Assistant United States Attorney
2100 Jamieson Avenue
Alexandria, Virginia 22314
(703) 299-3700

*Attorneys for the United States of America*

## Table of Contents

**Page**

Table of Authorities ........................................ iii

Introduction ........................................ 1

Issues Presented ........................................ 2

Statement of the Case ........................................ 2

A. Federal agents execute a search warrant [redacted] ........................................ 2

B. [redacted] ........................................ 3

C. A federal magistrate judge denies the motion to unseal the search warrant affidavit. ........................................ 4

D. The district court affirms the order denying the motion to unseal the search warrant affidavit. ........................................ 6

Summary of Argument ........................................ 7

Argument ........................................ 9

I. The Fourth Amendment does not entitle the movant to access the search warrant affidavit. ........................................ 9

A. The Fourth Amendment does not confer a preindictment right of access to a search warrant affidavit. ........................................ 10

1. The plain text of the Fourth Amendment does not provide a preindictment right of access. ........................................ 11

2. A preindictment right of access is not necessary to further the purposes of the Fourth Amendment ........................................ 17

3. Historical practice does not support a preindictment right of access. ....................22

B. Even if a Fourth Amendment right exists, sealing is the least restrictive means of protecting the government's compelling interest in secrecy. ....................26

C. The district court did not err in sealing the docket and, alternatively, any error was harmless. ....................31

II. The district court did not abuse its discretion in denying access to the search warrant affidavit under the common law. ....................34

Conclusion ....................36

Statement Regarding Oral Argument ....................37

Certificate of Compliance ....................37

## Table of Authorities

**Page**

**Cases**

*Adams v. Lexington-Fayette Urban Cnty. Gov't*,
154 F.4th 501 (6th Cir. 2025) ....................21

*Al-Dahir v. Northrop Grumman Info. Tech.*,
No. 8-563, 2008 WL 4470514 (E.D. La. Sept. 26, 2008) ....................15

*Balt. Sun Co. v. Goetz*, 886 F.2d 60 (4th Cir. 1989) .................... passim

*Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*,
403 U.S. 388 (1971) ....................20

*Cactil, LLC v. United States*, No. 3:24-cv-1270,
2024 WL 4139642 (S.D. Cal. Sept. 10, 2024) .................... 15, 28, 30

*Dalia v. United States*, 441 U.S. 238 (1979) .................... 11, 17

*Doe v. Pub. Citizen*, 749 F.3d 246 (4th Cir. 2014) ....................28

*Elkins v. United States*, 364 U.S. 206 (1960) ....................17

*Expeditions Unltd. Aquatic Enters., Inc. v. Smithsonian Inst.*,
566 F.2d 289 (D.C. Cir. 1977) ....................21

*FDA v. All. for Hippocratic Med.*, 602 U.S. 367 (2024) ....................11

*Forbes Media LLC v. United States*,
548 F. Supp. 3d 872 (N.D. Cal. 2021) ....................29

*Franks v. Delaware*, 438 U.S. 154 (1978) ....................17

*Groh v. Ramirez*, 540 U.S. 551 (2004) ....................20

*Illinois v. Rodriguez*, 497 U.S. 177 (1990) ....................17

*In re Application of U.S. for an Order Pursuant to 18 U.S.C.
§ 2703(d)*, 707 F.3d 283 (4th Cir. 2013) ....................33

*In re Ares Armor*, 687 F. App'x 622 (9th Cir. 2017) ....................27

*In re EyeCare Physicians of Am.*, 100 F.3d 514 (7th Cir. 1996) .................... 7, 10, 14, 27

*In re Grand Jury Proceedings*, 115 F.3d 1240 (5th Cir. 1997) .................... 10, 14

*In re Knight Publ'g Co.*, 743 F.2d 231 (4th Cir. 1984) .................... 32, 34

*In re Mot. to Intervene and Unseal Search Warrant Records*, No. 8:25-mc-539, 2025 WL 2637470 (D. Md. Sept. 12, 2025) ....................29

*In re Sealed Case*, 199 F.3d 522 (D.C. Cir. 2000)................................................33

*In re Search of 14416 Coral Gables Way*, 946 F. Supp. 2d 414 (D. Md. 2011)............................................................15

*In re Search of 624 NE 2nd St.*, No. 3:17-mc-588, 2019 WL 13074677 (D. Ore. Jan. 25, 2019) ........................................ 15, 19

*In re Search of Fair Fin.*, 692 F.3d 424 (6th Cir. 2012)................................. 10, 14

*In re Search of S & S Custom Cycle Shop*, 372 F. Supp. 2d 1048 (S.D. Ohio 2003) ................................................ 15, 20

*In re Search Warrant for 2934 Anderson Morris Rd.*, 48 F. Supp. 2d 1082 (N.D. Ohio 1999) ........................................... 18, 28, 30

*In re Search Warrant for Secretarial Area Outside Office of Gunn*, 855 F.2d 569 (8th Cir. 1988) .....................................................................29

*In re Search Warrants Issued Aug. 29, 1994*, 889 F. Supp. 296 (S.D. Ohio 1995) ............................................................15

*In re Search Warrants Issued Nov. 30, 2022*, No. 22-mj-1897, 2023 WL 5593959 (E.D. Pa. Aug. 29, 2023) ...............................................30

*In re Search Warrants Issued on Apr. 26, 2004*, 353 F. Supp. 2d 584 (D. Md. 2004)........................................... 11, 15, 19, 27

*In re Searches and Seizures*, No. 8-SW-361 DAD (L), 2008 WL 5411772 (E.D. Cal. Dec. 19, 2008)....................................... 15, 31

*In re Up North Plastics, Inc.*, 940 F. Supp. 229 (D. Minn. 1996).................... 15, 27

*In re Wash. Post Co.*, 807 F.2d 383 (4th Cir. 1986) ...............................................35

*Johnson v. United States*, 333 U.S. 10 (1948) ........................................................16

*Kentucky v. King*, 563 U.S. 452 (2011) ..................................................................11

*Martino v. United States*, No. 23-mc-11 (NLH/SAK), 2024 WL 531658 (D.N.J. Feb. 9, 2024).......................................................15

*Media Gen. Operations, Inc. v. Buchanan*, 417 F.3d 424 (4th Cir. 2005) ............................................................... passim

*Press-Enter. Co. v. Superior Ct. of Cal.*, 464 U.S. 501 (1984) ...............................35

*Savoy v. United States*, 604 F.3d 929 (6th Cir. 2010) ....................................18
*Stone v. Powell*, 428 U.S. 465 (1976)....................................................................17
*Stone v. Univ. of Md. Med. Sys. Corp.*, 855 F.2d 178 (4th Cir. 1988)....................32
*Times Mirror Co. v. United States*, 873 F.2d 1210 (9th Cir. 1989)............ 20, 25, 26
*United States v. Blakeney*, 949 F.3d 851 (4th Cir. 2020) ........................................13
*United States v. Calandra*, 414 U.S. 338 (1974) ......................................................17
*United States v. Clyburn*, 24 F.3d 613 (4th Cir. 1994)........................ 10, 13, 14, 24
*United States v. Corces*, No. 92-28-CR-T-17B,
1997 WL 447979 (M.D. Fla. July 28, 1997) ................................................29
*United States v. Fisher*, 711 F.3d 460 (4th Cir. 2013)................................................17
*United States v. Grubbs*, 547 U.S. 90 (2006) ................................................... 12, 13
*United States v. Hernandez*, No. 22-471,
2024 WL 47666 (2d Cir. Jan. 4, 2024)..........................................................33
*United States v. Hurwitz*, 459 F.3d 463 (4th Cir. 2006) ...........................................13
*United States v. Kolsuz*, 890 F.3d 133 (4th Cir. 2018) .............................................16
*United States v. Lyles*, 910 F.3d 787 (4th Cir. 2018)..................................................16
*United States v. Nkongho*, 107 F.4th 373 (4th Cir. 2024) .........................................16
*United States v. Shields*, 978 F.2d 943 (6th Cir. 1992) .............................................13
*United States v. Simons*, 206 F.3d 392 (4th Cir. 2000) .............................................12
*United States v. U.S. Dist. Ct. for East. Dist. of Mich.*,
407 U.S. 297 (1972)........................................................................................20
*Va. Dep't of State Police v. Wash. Post*, 386 F.3d 567 (4th Cir. 2004) ..................28
*Weeks v. United States*, 232 U.S. 383 (1914) ............................................................17
*Wong Sun v. United States*, 371 U.S. 471 (1963) ......................................................12
*Zurcher v. Stanford Daily*, 436 U.S. 547 (1978) .......................................................20

**Statutes**

18 U.S.C. § 2703(d) ........................................................................................ 32, 33

**Other Authorities**

Fabio Arcila, Jr., *In the Trenches: Searches and the Misunderstood Common-Law History of Suspicion and Probable Cause*, 10 U. Pa. J. Const. L. 1 (2007) ....................22

Fred A. Bernstein, Note, *Behind the Gray Door: Williams, Secrecy, and the Federal Grand Jury*, 69 N.Y.U. L. Rev. 563 (1994)....................24

George C. Thomas III, *The Common Law Endures in the Fourth Amendment*, 27 Wm. & Mary Bill Rts. J. 85 (2018)....................23

Lynn B. Oberlander, Note, *A First Amendment Right of Access to Affidavits in Support of Search Warrants*, 90 Colum. L. Rev. 2216 (1990)....................22

Wesley MacNeil Oliver, *The Neglected History of Criminal Procedure, 1850–1940*, 62 Rutgers L. Rev. 447 (2010) ....................24

**Rules**

Fed. R. Crim. P. 12(b)....................9

Fed. R. Crim. P. 41(g)....................18

Fed. R. Crim. P. 41(h)....................9

Fed. R. Crim. P. 41(i)....................26

**Treatises**

3A Wright & Miller's Federal Practice & Procedure § 690 (4th ed.) ....................18

**Constitutional Provisions**

U.S. Const. amend. IV .................... 11, 13, 16

## Introduction

A federal magistrate judge issued a warrant authorizing a search of [redacted] of the movant, [redacted] After the execution of the search warrant, [redacted]

The movant asked the magistrate judge to unseal the affidavit in support of the search warrant, arguing that he had a right of access under the Fourth Amendment and the common law. The magistrate judge denied the motion, and the district court affirmed. The district court determined that, [redacted]

The movant now asks this Court to be the first court of appeals to recognize a Fourth Amendment preindictment right of access to a warrant affidavit. Because the plain language of the Fourth Amendment does not protect such a right, the Court should reject this novel interpretation. But even if even if the Fourth Amendment

provides a qualified right of access, the district court correctly determined that [redacted] For similar reasons, balancing the movant's qualified common law right of access with the government's weighty interest in protecting the integrity of an ongoing investigation, the district court did not abuse its discretion in declining to unseal the affidavit. Therefore, the Court should affirm.

## Issues Presented

**1.** Did the district court properly decline to unseal the search warrant affidavit, either because the Fourth Amendment does not provide a preindictment right to access a warrant affidavit, or because sealing is the least restrictive means available to further the government's compelling interest in secrecy?

**2.** Did the district court abuse its discretion in declining to unseal the search warrant affidavit based on the movant's qualified common law right of access?

## Statement of the Case

### A. Federal agents execute a search warrant [redacted].

In April 2025, a federal magistrate judge in the Eastern District of Virginia signed a warrant authorizing a search of [redacted]

[redacted] The warrant authorized law enforcement to seize evidence of [redacted]

**B.** [redacted]

[redacted]

[redacted]

**C. A federal magistrate judge denies the motion to unseal the search warrant affidavit.**

The movant filed a motion to unseal the search warrant affidavit. [redacted]

The government opposed the motion. [redacted]

[redacted]

[redacted]

[redacted]

### D. The district court affirms the order denying the motion to unseal the search warrant affidavit.

The movant appealed the denial of his motion to the district court, renewing the arguments raised in the motion to unseal. *See* JA9–20. The government renewed its arguments in opposition. *See* JA113–122.

The district court affirmed the magistrate judge's order. JA146. [redacted]

Following the district court's decision, the movant timely noted his appeal. JA147.

## Summary of Argument

The Court should affirm the district court's order declining to unseal the search warrant affidavit.

**1.** The Fourth Amendment did not require the district court to unseal the search warrant affidavit. The plain language of the Fourth Amendment evidences no preindictment right of access to a warrant affidavit. The Supreme Court and this Court have consistently rejected efforts to engraft on the Fourth Amendment requirements beyond its plain text. Further, the Fourth Amendment requires neither that a warrant set forth the basis for finding probable cause nor that the basis for probable cause be established in a written affidavit. Accordingly, the Court should join the only court of appeals to have reached this issue and hold that the Fourth Amendment does not confer a right of access to a warrant affidavit. *See In re EyeCare Physicians of Am.*, 100 F.3d 514, 517 (7th Cir. 1996).

Notwithstanding this plain language, the movant maintains that the purposes and history of the Fourth Amendment support a preindictment right of access to a warrant affidavit. But established criminal procedures and civil remedies protect the interests asserted, such that preindictment access to the affidavit is not necessary. And history, like the constitutional text, reflects no tradition of written affidavits in support of warrants. Accordingly, there is little historical support for a Fourth Amendment requirement of preindictment access to such affidavits.

But even if the Court concludes that the Fourth Amendment encompasses such a right, the Court should affirm. The district court properly concluded that [redacted] Additionally, the court appropriately determined that [redacted] Because the district court relied on the ex parte declaration and the specific reasons for sealing submitted by the government to support its decision, the court's brief explanation of its decision was sufficient.

The district court's failure to give public notice of a request to seal the docket below does not warrant vacatur and remand. This Court has refused to require public docketing of preindictment investigative matters and therefore should not require public docketing of preindictment search warrant proceedings. Alternatively, even if public docketing were required, any procedural error here was harmless.

**2.** The district court did not abuse its discretion in declining to unseal the search warrant affidavit based on the movant's qualified common law right of access. Sealing the affidavit is essential to preserve a higher value, namely, [redacted]

[redacted] And sealing is narrowly tailored to serve that interest. *See* JA146. On balance, the competing interests weigh against disclosure.

## Argument

### I. The Fourth Amendment does not entitle the movant to access the search warrant affidavit.

[redacted] It is "common sense" that "proceedings for search warrants are not open to the public." *Balt. Sun Co. v. Goetz*, 886 F.2d 60, 64 (4th Cir. 1989). Accordingly, at this preliminary stage, the movant has no First Amendment right of access to the sealed affidavit in support of the search warrant. *See id.* at 64–65. Because search warrant materials are judicial records, however, the movant has a common law qualified right of access, which "is committed to the sound discretion of the judicial officer who issued the warrant." *Id.* at 65. And, after the return of any indictment, the government would have to disclose the affidavit to the movant in discovery. At that point, the movant could challenge the basis for the search by filing a motion to suppress. *See* Fed. R. Crim. P. 12(b)(3)(C); Fed. R. Crim. P. 41(h).

Notwithstanding these established procedures, the movant contends that the Fourth Amendment also confers a preindictment right of access to the search warrant affidavit. As the only court of appeals to have squarely addressed this issue has held,

the plain language of the Fourth Amendment does not encompass such a right. *See In re EyeCare Physicians of Am.*, 100 F.3d 514, 517 (7th Cir. 1996); *see also In re Search of Fair Fin.*, 692 F.3d 424, 431 (6th Cir. 2012) (citing *In re EyeCare Physicians of Am.* with approval); *In re Grand Jury Proceedings*, 115 F.3d 1240, 1246 (5th Cir. 1997) (similar). Indeed, the Fourth Amendment does not even "require that the basis for probable cause be established in a written affidavit." *United States v. Clyburn*, 24 F.3d 613, 617 (4th Cir. 1994). The movant's arguments based on the purposes and history of the Fourth Amendment fail to overcome the clear import of the Amendment's text. But even if the Fourth Amendment provides a qualified right of access, the district court properly determined that [redacted] Therefore, the Fourth Amendment does not entitle the movant to disclosure of the search warrant affidavit.

**A. The Fourth Amendment does not confer a preindictment right of access to a search warrant affidavit.**

Because the plain language of the Fourth Amendment does not provide a right of access to a search warrant affidavit, and the movant's arguments based on purpose and history are not persuasive, the Court should join the Seventh Circuit in concluding that the Amendment does not protect such a right.

### 1. The plain text of the Fourth Amendment does not provide a preindictment right of access.

The Court must "begin as always with the precise text of the Constitution." *FDA v. All. for Hippocratic Med.*, 602 U.S. 367, 378 (2024). The Fourth Amendment provides:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

U.S. Const. amend. IV. "The text of the Amendment thus expressly imposes two requirements." *Kentucky v. King*, 563 U.S. 452, 459 (2011). "First, all searches and seizures must be reasonable." *Id.* "Second, a warrant may not be issued unless probable cause is properly established and the scope of the authorized search is set out with particularity." *Id.*

The movant insists that the right to access a search warrant affidavit is "'implicit in [the] language' of the Fourth Amendment." Mov. Br. 26 (quoting *In re Search Warrants Issued on Apr. 26, 2004*, 353 F. Supp. 2d 584, 588 (D. Md. 2004)). But the Supreme Court has consistently declined to engraft on the Fourth Amendment requirements beyond its plain text. For example, the Fourth Amendment does not require "specificity" as to "the means by which warrants are executed." *Dalia v. United States*, 441 U.S. 238, 257 (1979). The Supreme Court explained that "[n]othing in the language of the Constitution or in this Court's

decisions interpreting that language suggests that, in addition to the [] requirements" of a neutral magistrate, probable cause, and particularity, "search warrants also must include a specification of the precise manner in which they are to be executed." *Id.*

Similarly, "the Fourth Amendment does not require that the triggering condition for an anticipatory search warrant be set forth in the warrant itself." *United States v. Grubbs*, 547 U.S. 90, 99 (2006). The Supreme Court reasoned that "[t]he language of the Fourth Amendment is likewise decisive here; its particularity requirement does not include the conditions precedent to execution of the warrant." *Id.* at 98. Notably, "[t]he Fourth Amendment does not require that the warrant set forth the magistrate's basis for finding probable cause." *Id.* Ultimately, the Supreme Court explained, "[t]he Constitution protects property owners . . . by interposing, *ex ante*, the 'deliberate, impartial judgment of a judicial officer . . . between the citizen and the police,' and by providing, *ex post*, a right to suppress evidence improperly obtained and a cause of action for damages." *Id.* at 99 (quoting *Wong Sun v. United States*, 371 U.S. 471, 481–82 (1963)).

This Court has likewise hewed closely to the text of the Fourth Amendment in interpreting its requirements. For example, because "[t]he Fourth Amendment does not mention notice," "the failure of the team executing the warrant to leave either a copy of the warrant or a receipt for the items taken" does not violate the Fourth Amendment. *United States v. Simons*, 206 F.3d 392, 403 (4th Cir. 2000).

Similarly, "nothing in the Constitution" requires that "an executing officer possess or exhibit the affidavit or any other document incorporated into the warrant at the time of the search in order for the warrant to be valid." *United States v. Hurwitz*, 459 F.3d 463, 472 (4th Cir. 2006) (emphasis omitted). Nor does the Fourth Amendment require a search warrant to "specify the crime for which the executing officers may seek evidence." *United States v. Blakeney*, 949 F.3d 851, 862 (4th Cir. 2020). Rather, "[t]he Fourth Amendment 'specifies only two matters that must be particularly described in [a] warrant: the place to be searched and the persons or things to be seized.'" *Id.* (quoting *Grubbs*, 547 U.S. at 97–98). "Particularity with respect to the criminal activity suspected is not on that list." *Id.*

In fact, the Fourth Amendment does not even "require that the basis for probable cause be established in a written affidavit; it merely requires that the information provided the issuing magistrate be supported by 'Oath or affirmation.'" *Clyburn*, 24 F.3d at 617 (quoting U.S. Const. amend. IV). Indeed, the Fourth Amendment "does not 'require that statements made under oath in support of probable cause be tape-recorded or otherwise placed on the record or made part of the affidavit.'" *Id.* (quoting *United States v. Shields*, 978 F.2d 943, 946 (6th Cir. 1992)). Rather, "magistrates may consider sworn, unrecorded oral testimony in making probable cause determinations during warrant proceedings." *Id.* Although "the presentation of written affidavits or recorded testimony provides a preferable

way of securing a search warrant," the Fourth Amendment does not require it. *Id.* at 618.

Given that the Fourth Amendment does not require that a warrant set forth the basis for finding probable cause, let alone require any affidavit, it follows that the Fourth Amendment says nothing about access to the affidavit in support of a warrant. *See In re EyeCare Physicians of Am.*, 100 F.3d at 517 (The "text" of the Fourth Amendment "does not address, even implicitly, the problem of lack of access to sealed search warrant affidavits."). Accordingly, the only federal court of appeals that has squarely addressed this issue held that the Fourth Amendment does not confer a preindictment right of access to a warrant affidavit. *See id.* ("The Warrant Clause of the Fourth Amendment circumscribes the *issuance* of warrants, but does not address access to the affidavits employed to support them."). The Fifth and the Sixth Circuits have embraced the Seventh Circuit's reasoning. *See In re Search of Fair Fin.*, 692 F.3d at 431 ("The Fourth Amendment has no bearing on the question of whether documents related to the issuance of search warrants must be made available for public inspection."); *In re Grand Jury Proceedings*, 115 F.3d at 1246 (concluding the district court's exercise of "anomalous jurisdiction" to unseal search warrant affidavit was inappropriate because the government did not display "callous disregard" for the movants' Fourth Amendment rights).

Other lower courts are in accord. *See, e.g.*, *Martino v. United States*, No. 23-mc-11 (NLH/SAK), 2024 WL 531658, at *4 (D.N.J. Feb. 9, 2024) (finding "no Fourth Amendment right of access to pre-indictment search warrant materials based upon a plain reading of the text of the Amendment"); *Al-Dahir v. Northrop Grumman Info. Tech.*, No. 8-563, 2008 WL 4470514, at *6 (E.D. La. Sept. 26, 2008) ("[T]he language of the Fourth Amendment does not speak to any such right of access to warrant affidavits."); *In re Search of S & S Custom Cycle Shop*, 372 F. Supp. 2d 1048, 1051–52 (S.D. Ohio 2003) ("The better reasoned cases have held that no right to inspect sealed affidavits for search warrants exists under the Constitution or the Criminal Rules, prior to the initiation of a criminal proceeding against the movant." (emphasis omitted)).[1]

Resisting this plain-language interpretation, the movant asserts that, under the Seventh Circuit's reasoning, the Fourth Amendment "would not address suppression of wrongfully-seized evidence," "the return of wrongfully-seized property," "limits on the disposition of property once seized," "the right to challenge the truth of an

[1] *But see Cactil, LLC v. United States*, No. 3:24-cv-1270, 2024 WL 4139642, at *3–4 (S.D. Cal. Sept. 10, 2024); *In re Search of 624 NE 2nd St.*, No. 3:17-mc-588, 2019 WL 13074677, at *9 (D. Ore. Jan. 25, 2019); *In re Search of 14416 Coral Gables Way*, 946 F. Supp. 2d 414, 419 (D. Md. 2011); *In re Searches and Seizures*, No. 8-SW-361 DAD (L), 2008 WL 5411772, at *3–4 (E.D. Cal. Dec. 19, 2008); *In re Search Warrants Issued on Apr.26, 2004*, 353 F. Supp. 2d at 588–91; *In re Up North Plastics, Inc.*, 940 F. Supp. 229, 232–33 (D. Minn. 1996); *In re Search Warrants Issued Aug. 29, 1994*, 889 F. Supp. 296, 299 (S.D. Ohio 1995).

affidavit or the breadth of a resulting warrant," or the requirement of a "neutral and detached" magistrate. Mov. Br. 27–28. Instead, these concepts reinforce that a plain reading of the Fourth Amendment does not encompass a preindictment right of access to a search warrant affidavit.

Several of the cited requirements are rooted in the Fourth Amendment's protection "against unreasonable searches and seizures." U.S. Const. amend. IV. For instance, "[r]easonableness" requires "proportionality between the gravity of the offense and the intrusiveness of the search." *United States v. Lyles*, 910 F.3d 787, 795 (4th Cir. 2018). Likewise, "a seizure reasonable at its inception must remain reasonable in scope and duration to satisfy the Fourth Amendment." *United States v. Nkongho*, 107 F.4th 373, 384 (4th Cir. 2024) (quoting *United States v. Kolsuz*, 890 F.3d 133, 141 (4th Cir. 2018)). Similarly, the mandate that "no Warrants shall issue, but upon probable cause," U.S. Const. amend. IV, requires that a neutral and detached magistrate, rather than "the officer engaged in the often competitive enterprise of ferreting out crime," make that determination. *Johnson v. United States*, 333 U.S. 10, 14 (1948).

Other precepts are judicially crafted remedies to deter Fourth Amendment violations. It is well established that the exclusionary rule "is a judicially created remedy designed to safeguard Fourth Amendment rights generally through its deterrent effect, rather than a personal constitutional right of the party aggrieved."

*United States v. Calandra*, 414 U.S. 338, 348 (1974). In turn, the right to challenge the veracity of the warrant affidavit, *see Franks v. Delaware*, 438 U.S. 154, 164 (1978), is an application of the exclusionary rule. *See, e.g.*, *United States v. Fisher*, 711 F.3d 460, 469 (4th Cir. 2013). So, too, is the right to seek "the return of property secured through an illegal search or seizure." *Stone v. Powell*, 428 U.S. 465, 483 (1976) (discussing *Weeks v. United States*, 232 U.S. 383 (1914), *overruled on other grounds by Elkins v. United States*, 364 U.S. 206 (1960)).

In sum, nothing in the text of the Fourth Amendment or in the various applications of the exclusionary rule, which is a "trial right," *see Illinois v. Rodriguez*, 497 U.S. 177, 183 (1990), establishes a preindictment right of access to a search warrant affidavit.

#### 2. A preindictment right of access is not necessary to further the purposes of the Fourth Amendment.

Although the language of the Fourth Amendment is "precise and clear," *Dalia*, 441 U.S. at 255 (internal quotation marks omitted), the movant urges the Court to look beyond the text and rely on the purposes of the Amendment to infer a preindictment right of access to a search warrant affidavit. Because such access is not necessary to further any of the interests asserted, the Court should reject this extratextual interpretation.

*First*, the movant claims that the subject of a search needs preindictment access to the affidavit to be able to seek the return of his property. Mov. Br. 11–13.

In particular, he emphasizes the need to review the affidavit in order to challenge the legality of the search. *See* Mov. Br. 12. But the subject of a search need not establish illegality to seek return of his property. *See, e.g.*, 3A Wright & Miller's Federal Practice & Procedure § 690 (4th ed.) ("In order to file a motion for return, the seizure need not have been unlawful."). By rule, "[a] person aggrieved by an unlawful search and seizure of property *or by the deprivation of property* may move for the property's return." Fed. R. Crim. P. 41(g) (emphasis added). Thus, even "a person whose property has been lawfully seized may seek return of property when aggrieved by the government's continued possession of it." Fed. R. Crim. P. 41(g) advisory committee's note to 1989 amendment; *see also id.* (distinguishing between "a person aggrieved either by an unlawful seizure *or* by deprivation of the property" (emphasis added)).

Under this rule, "[m]ovants for return of property must show they are entitled to lawful possession of the property." Wright & Miller, *supra*, § 690; *see, e.g.*, *Savoy v. United States*, 604 F.3d 929, 932–33 (6th Cir. 2010). Even courts that have assumed a Fourth Amendment right of access to a search warrant affidavit have recognized that the subject of a search "need only examine the search warrant and the inventory listing of warrant items seized to determine whether they are entitled to lawful possession of any of the seized items." *In re Search Warrant for 2934 Anderson Morris Rd.*, 48 F. Supp. 2d 1082, 1084 (N.D. Ohio 1999). The movant

had access to precisely those materials here. *See* [redacted] Consequently, a target deprived of his property during the pendency of his investigation, *see* Mov. Br. 11–12, does not necessarily require access to the affidavit to move for the property's return. And if a target is charged with a crime, then the government must disclose the affidavit in discovery, and the target can challenge the legality of the search on a motion to suppress. Thus, the contention that "[w]ithout the right of access to the affidavit on which the search warrant was based, the search subject could *never*" challenge the search, Mov. Br. 11 (quoting *In re Search Warrants Issued on Apr.26, 2004*, 353 F. Supp. 2d at 588), is overstated.

*Second*, the movant contends that access to the affidavit is necessary to prevent repetition of unreasonable searches. He projects that the government "could seek and obtain multiple search warrants against the same target, seize any amount of property each time, search the property in whatever manner it chooses, and do so over an indefinite period of time" and thereby prevent the target from seeking relief "unless and until the government chooses to indict." Mov. Br. 15 (quoting *In re Search of 624 NE 2nd St.*, 2019 WL 13074677, at *8).

This parade of horribles "can be avoided by a neutral magistrate carrying out his responsibilities under the Fourth Amendment, for he has ample tools at his disposal to confine warrants to search within reasonable limits." *See Zurcher v.*

*Stanford Daily*, 436 U.S. 547, 567 (1978). Indeed, "[p]rior review by a neutral and detached magistrate is the time-tested means of effectuating Fourth Amendment rights." *United States v. U.S. Dist. Ct. for East. Dist. of Mich.*, 407 U.S. 297, 318 (1972). Moreover, as a practical matter, the time and resources required to execute multiple search warrants makes it unlikely the government would do so frivolously. And if the government actually acts in a manner that infringes on a subject's constitutional rights, then "vindication" "can be achieved" through a civil action under *Bivens*.[2] *See In re Search of S & S Custom Cycle Shop*, 372 F. Supp. 2d at 1051; *see also Times Mirror Co. v. United States*, 873 F.2d 1210, 1218 (9th Cir. 1989) (underscoring "the other mechanisms—including suppression motions and civil actions for violation of constitutional rights—that are already in place to deter governmental abuses of the warrant process").

More broadly, the movant contends that preindictment access to a search warrant affidavit is necessary because the exclusionary rule does not protect "one who is never charged with a crime." Mov. Br. 16. But civil remedies exist precisely for such circumstances. *See, e.g.*, *Groh v. Ramirez*, 540 U.S. 551, 555 (2004) (respondents, who were never charged following the search of their ranch, sued officers under *Bivens* for a Fourth Amendment violation). The movant also

[2] *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971).

speculates that the subject of a search could lose evidence during the period between the execution of a warrant and the return of an indictment, increasing the "likelihood" of a wrongful conviction. Mov. Br. 16. But the movant cites no authority for this proposition, and he does not explain how preindictment access to the affidavit would avert this speculative harm. In any event, the target could simply consult the warrant and attachments to determine the crimes with which he could be charged and preserve any relevant evidence accordingly.

*Third*, the movant asserts that preindictment access to the search warrant affidavit is necessary to avoid other harms. In addition to the need to preserve potential evidence, the movant asserts that preindictment access to the affidavit is necessary to protect a target's reputation and reduce his anxiety. *See* Mov. Br. 17–18. Although both are legitimate personal interests, the Fourth Amendment simply does not protect against a loss of reputation or feelings of anxiety. *See, e.g.*, *Adams v. Lexington-Fayette Urban Cnty. Gov't*, 154 F.4th 501, 509 (6th Cir. 2025) ("[A]s with reputation, protecting mental health under the Fourth Amendment would significantly upend our understanding of Fourth Amendment doctrine."); *Expeditions Unltd. Aquatic Enters., Inc. v. Smithsonian Inst.*, 566 F.2d 289, 294 (D.C. Cir. 1977) ("While damage to reputation is not inconsequential, and can, under some circumstances, qualify for procedural protection under the due process clause,

it is not as basic to a free society as the Fourth Amendment right to be free from arbitrary search and seizure of person or property . . . .").

### 3. Historical practice does not support a preindictment right of access.

The movant also asserts that historical practice supports a Fourth Amendment right of preindictment access to a search warrant affidavit. But just as the text of the Fourth Amendment says nothing about affidavits, history reflects no tradition of using affidavits. Given that affidavits are a relatively modern development, history does not establish a tradition of access to such affidavits.

The movant contends that, "[f]or at least half of American history," search subjects "'could challenge the probable cause determination [underlying the search warrant], indicating that they had access to the affidavit or its analogues.'" Mov. Br. 19 (quoting Lynn B. Oberlander, Note, *A First Amendment Right of Access to Affidavits in Support of Search Warrants*, 90 Colum. L. Rev. 2216, 2228 (1990)). But the academic literature does not consistently support that premise.

Some scholars argue that "[i]n the Framers' world, non-elite justices of the peace often may not have consistently acted as aggressive probable cause sentries prior to issuing search warrants." Fabio Arcila, Jr., *In the Trenches: Searches and the Misunderstood Common-Law History of Suspicion and Probable Cause*, 10 U. Pa. J. Const. L. 1, 55 (2007). One reason for that view is a "difference in modern versus Framers'-era search warrant procedural standards." *Id.* at 37. In particular,

"[m]odern practice requires the preservation of the detailed facts provided to the judge in support of a probable cause claim (commonly in the form of an affidavit or recorded testimony), which in conjunction with the warrant provides the mechanism through which a search target can assess whether the search was properly allowed and conducted." *Id.* at 38. By contrast, although "there is a bit of authority that a comparable procedure was available during the Framers' era, it is likely that in many cases only a less, reliable, wholly post hoc inquiry was available." *Id.* "[V]ery often," search warrant application "forms did not call for the underlying facts to be specified." *Id.* "Thus, justices of the peace reviewing these search warrant applications often lacked the necessary information to scrutinize probable cause, unless they took the initiative to obtain it orally from the applicant prior to issuing the requested warrant." *Id.* This historical account is at odds with a tradition of search subjects relying on affidavits to formally challenge the grounds for a warrant.

Notwithstanding the blurry picture of the level of judicial scrutiny of the basis for probable cause supporting a warrant, history reflects a practice of oaths, not affidavits. *See, e.g.*, George C. Thomas III, *The Common Law Endures in the Fourth Amendment*, 27 Wm. & Mary Bill Rts. J. 85, 118 (2018) ("While the issue is not free from doubt, Lord Hale seems to say that a search warrant would issue based merely on the oath of one seeking the warrant."); Wesley MacNeil Oliver, *The Neglected History of Criminal Procedure, 1850–1940*, 62 Rutgers L. Rev. 447, 452 (2010)

(“An application for a search or arrest warrant required an oath that a crime had in fact occurred, something that a victim could easily swear on the basis of the injury he suffered, an assault or missing good for instance.”). “Applications for search and arrest warrants merely required the applicant to allege that he had probable cause to believe a particular person was guilty of an offense or that evidence of the crime could be recovered in a particular place.” Oliver, *supra*, at 453. This process apparently “did not require any inquiry into whether the complainant’s reasons were supported by evidence other than his oath.” Thomas, *supra*, at 118. “Once the victim made his complaint, the magistrate issued a warrant to the constable directing him to retrieve a particular person or search in a specified place for a certain item.” Oliver, *supra*, at 453.

The practice of submitting affidavits describing the facts supporting probable cause is a relatively modern development. *See, e.g.*, Fred A. Bernstein, Note, *Behind the Gray Door: Williams, Secrecy, and the Federal Grand Jury*, 69 N.Y.U. L. Rev. 563, 606 (1994) (“Most, if not all, modern judicial practices, such as the suppression hearing and the search warrant affidavit, came into existence relatively recently.”). Thus, just as the text of the Fourth Amendment says nothing about affidavits, *see Clyburn*, 24 F.3d at 617, historical practice evidences no longstanding tradition of affidavits. Consequently, the history of the Fourth Amendment does not support a preindictment right of access to a search warrant affidavit.

The movant further claims there is a historical tradition of access to affidavits after the execution of a search warrant. Mov. Br. 23–24. But this Court rejected the existence of such a historical tradition decades ago. *See Goetz*, 886 F.2d at 64 (holding the press does not have a First Amendment right of access to affidavit after execution of search warrant because proceedings for issuance of search warrants have not "historically been open to the press and general public" (internal quotation marks omitted)); *see also Times Mirror Co.*, 873 F.2d at 1214 ("[T]he experience of history implies a judgment that warrant proceedings and materials should not be accessible to the public, at least while a pre-indictment investigation is still ongoing . . . ."). The Court recognized that "the need for sealing affidavits may remain after execution and in some instances even after indictment" where, for example, the affidavit "describe[s] continuing investigations, disclose[s] information gleaned from wiretaps that have not yet been terminated, or reveal[s] the identity of informers whose lives would be endangered." *Goetz*, 886 F.2d at 64. Although the affidavit is "frequently" "open for inspection by the press and public in the clerk's office after the warrant has been executed," "this is not demanded by the [F]irst [A]mendment." *Id.*

To be sure, "[t]he magistrate judge to whom the warrant is returned must attach to the warrant a copy of the return, of the inventory, and of all other related papers and must deliver them to the clerk in the district where the property was

seized." Fed. R. Crim. P. 41(i). Contrary to the movant's suggestion, *see* Mov. Br. 23, this filing requirement does not demonstrate a historical tradition of disclosure of the warrant affidavit to a target. Instead, this rule "does no more than require a magistrate to file search warrant papers with the Clerk of the District Court." *Times Mirror Co.*, 873 F.2d at 1220 (discussing predecessor provision to Rule 41(i)). "By requiring that all the materials related to a warrant be assembled and lodged with the clerk of the district court," this rule "ensures that the materials will be in one location and in the custody of the clerk of the district court at the time that a suppression motion or a motion for return of property under Rule [41(g)] is made." *Id.* This rule "merely provides for the efficient and orderly maintenance of warrant materials." *Id.*

### B. Even if a Fourth Amendment right exists, sealing is the least restrictive means of protecting the government's compelling interest in secrecy.

Even assuming the Fourth Amendment protects a preindictment right to access a search warrant affidavit, the district court properly concluded that [redacted] Where courts have recognized a Fourth Amendment "right of a person whose property was seized to examine the affidavit upon which the warrant was issued," those courts have made clear that right "is not absolute." *In re Up North Plastics, Inc.*, 940 F. Supp. at 233;

*see, e.g.*, *In re Search Warrants Issued on Apr.26, 2004*, 353 F. Supp. 2d at 591 (recognizing "this right is limited"). To "prevent a subject from inspecting the contents of a search affidavit, the government must demonstrate to the court that: 1) there is a compelling governmental interest requiring materials to be kept under seal, and 2) there is no less restrictive means, such as redaction, available." *In re Search Warrants Issued on Apr.26, 2004*, 353 F. Supp. 2d at 591.

The movant contends that, if the Fourth Amendment protects a preindictment right of access to a search warrant affidavit, then the Court should review the district court's sealing decision de novo. *See* Mov. Br. 29–30. Because the only other court of appeals to squarely address this question did not recognize such a right, it did not address the applicable standard of review. *See In re EyeCare Physicians of Am.*, 100 F.3d at 517. One court of appeals, in an unpublished decision, assumed without deciding a Fourth Amendment right "exists," but concluded "[t]he district court did not abuse its discretion" by denying a request to unseal the names of federal agents in a search warrant affidavit. *In re Ares Armor*, 687 F. App'x 622, 624 (9th Cir. 2017) (mem.). By contrast, in cases involving a qualified First Amendment right of access to documents, this Court has reviewed the district court's sealing decision de novo. *See, e.g.*, *Doe v. Pub. Citizen*, 749 F.3d 246, 269 (4th Cir. 2014); *Va. Dep't of State Police v. Wash. Post*, 386 F.3d 567, 578 (4th Cir. 2004). Ultimately, the

Court need not resolve this question in this case because, under any standard of review, the government has met its burden.

First, as the ex parte declaration describes, *see* SA42–48, and as the district court found, [redacted] Multiple courts that have assumed or recognized a Fourth Amendment right of access have determined that similar governmental interests were compelling reasons to continue sealing a search warrant affidavit. *See, e.g.*, *In re Search Warrant for 2934 Anderson Morris Rd.*, 48 F. Supp. 2d at 1084 (assuming a Fourth Amendment right of access but finding that "the sensitive nature of the information contained in the affidavit, the compelling governmental interest in protecting the ongoing investigation, and the privacy interests of those named in the affidavit, all weigh[ed] in favor of maintaining the affidavit under seal"); *cf. Cactil*, 2024 WL 4139642, at *4 (finding the petitioner had a qualified Fourth Amendment right of access but the government had established a compelling interest in continued sealing based on, among other concerns, "the risk of compromising or influencing confidential informants," "victims," or "international law enforcement efforts").

Likewise, courts considering other claims of access have determined the government has a compelling interest in preventing a disclosure that would compromise an ongoing investigation. *See, e.g.*, *Media Gen. Operations, Inc. v.*

*Buchanan*, 417 F.3d 424, 435 (4th Cir. 2005) (concluding the search warrant affidavit "contain[ed] sensitive details of an ongoing investigation, which may well jeopardize the ongoing investigation," and "disclosure of any of the information there would hamper the investigation"); *In re Mot. to Intervene and Unseal Search Warrant Records*, No. 8:25-mc-539, 2025 WL 2637470, at *2 (D. Md. Sept. 12, 2025) (finding that "[p]remature disclosure could compromise the Government's ability to conduct its investigation by undermining its ability to use specific investigative techniques and thwarting its efforts to obtain information from certain sources"); *United States v. Corces*, No. 92-28-CR-T-17B, 1997 WL 447979, at *9 (M.D. Fla. July 28, 1997) (finding that the government had "a compelling interest in preserving the secrecy of law enforcement techniques"); *see also In re Search Warrant for Secretarial Area Outside Office of Gunn*, 855 F.2d 569, 574 (8th Cir. 1988) (holding that there was "a substantial probability that the government's on-going investigation would be severely compromised if the sealed documents were released"); *Forbes Media LLC v. United States*, 548 F. Supp. 3d 872, 880 (N.D. Cal. 2021) ("The government's interest in protecting its sources and methods of gathering information is both substantial and compelling because granting the public access to these documents would provide criminal wrongdoers insight into the investigation and a roadmap to avoid apprehension.").

Second, the district court correctly determined that [redacted] The court reasoned that [redacted] Other courts assessing a qualified Fourth Amendment right of access have similarly concluded that producing a redacted affidavit would not be an adequate alternative to sealing. *See, e.g.*, *Cactil*, 2024 WL 4139642, at *4 (emphasizing "the number of redactions that would be required to safeguard against the[] risks" of disclosure); *In re Search Warrants Issued Nov. 30, 2022*, No. 22-mj-1897, 2023 WL 5593959, at *4 (E.D. Pa. Aug. 29, 2023) (reasoning that "redaction would result in a long series of blank pages being produced because disclosure of information throughout the affidavit would allow anyone familiar with the activities described therein to identify witness identities and information sources"); *In re Search Warrant for 2934 Anderson Morris Rd.*, 48 F. Supp. 2d at 1084 (finding that "even redactions would not protect the identities of various individuals due to the context in which they are mentioned").

The movant challenges the district court's justification for its decision. *See* Mov. Br. 32. But "[w]here, as here, the government's explanations and the judicial officer's reasons for sealing are patently apparent upon consideration of the

documents at issue," and "the record provides sufficient information for appellate review," the justification is adequate. *See Media Gen. Operations*, 417 F.3d at 431. Here, the district court "relied on" the ex parte declaration "and the reasons for sealing presented by the government to support [its] decision." *Id.* at 430. Because the ex parte declaration "sets forth a specific factual basis for finding that the government" has "a compelling interest" in maintaining the search warrant affidavit under seal, the district court's brief explanation of its decision was sufficient. *See In re Searches and Seizures*, 2008 WL 5411772, at *4 ("[W]hile it would compromise the government's need for confidentiality to public[ly] reveal" the "reasons" why the government had met its burden, "the court [was] persuaded that the government [was] entitled to an additional period of secrecy." (internal quotation marks omitted)).

Therefore, even if the Fourth Amendment conferred a preindictment right of access to the search warrant affidavit, the district court properly declined to unseal the affidavit on this record.

### C. The district court did not err in sealing the docket and, alternatively, any error was harmless.

The movant asks the Court to vacate and remand because the district court failed to give the public notice of a request to seal the docket below. Mov. Br. 38. But he cites no case applying this requirement to the proceedings on a preindictment motion to unseal a search warrant affidavit. Rather, where a publisher challenged

the district court's order sealing court records in a criminal case during a jury trial, this Court held that the district court erred because "[t]he public was entitled to notice of counsel's request to seal, and an opportunity to object to the request before the court made its decision." *In re Knight Publ'g Co.*, 743 F.2d 231, 235 (4th Cir. 1984). Similarly, where a newspaper asserted both a common law and a First Amendment right of access to judicial records and documents in a pending medical malpractice case, this Court held that the district court erred by sealing the record without first giving the "public notice of a request to seal and a reasonable opportunity to challenge it." *Stone v. Univ. of Md. Med. Sys. Corp.*, 855 F.2d 178, 181 (4th Cir. 1988).

This Court has made clear, however, that there is no First Amendment "right of access to an affidavit for a search warrant." *Goetz*, 886 F.2d at 65; *see also Media Gen. Operations*, 417 F.3d at 429. And this Court has "never held" that "pre-indictment investigative matters such as [18 U.S.C.] § 2703(d) orders, pen registers, and wiretaps, which are all akin to grand jury investigations, must be publicly docketed." *In re Application of U.S. for an Order Pursuant to 18 U.S.C. § 2703(d)*, 707 F.3d 283, 295 (4th Cir. 2013); *cf. In re Sealed Case*, 199 F.3d 522, 525 (D.C. Cir. 2000) (declining to "take the uncharted step" of requiring public docketing of grand jury ancillary proceedings). This Court has "refuse[d] to venture into these uncharted waters" and "refrain[ed] from requiring district courts to

publicly docket each matter in the § 2703(d) context." *In re Application of U.S. for an Order Pursuant to 18 U.S.C. § 2703(d)*, 707 F.3d at 295. In determining that there is no First Amendment right of access to § 2703(d) orders, the Court expressly analogized "[p]roceedings for the issuance of § 2703(d) orders" to "proceedings for the issuance of search warrants," which "are not open." *Id.* at 292 (citing *Goetz*, 886 F.2d at 64); *see also id.* at 291 n.9 (reasoning that "§ 2703(d) orders are most analogous to sealed or unexecuted search warrants and grand jury proceedings"). Given the similarities to § 2703(d) proceedings, the Court should decline to require district courts to publicly docket preindictment search warrant proceedings.

Alternatively, even if the Court holds that the district court must publicly docket preindictment search warrant proceedings, vacatur and remand is not warranted because any procedural error here was harmless. *See, e.g.*, *United States v. Hernandez*, No. 22-471, 2024 WL 47666, at *4 (2d Cir. Jan. 4, 2024) (order) (holding that the district court's "procedural error" in failing to docket the existence of sealed proceedings "was harmless" and did "not warrant remand"). Notwithstanding the lack of public notice, the movant fully aired his arguments for unsealing before both the magistrate judge and the district court. Moreover, the district court, having assumed a Fourth Amendment right of access, specifically considered the "reasons for" and "alternatives to sealing." *In re Knight Publ'g Co.*, 743 F.2d at 235; *see* JA144–146. Accordingly, a remand to the district court for

public notice and an additional sealing determination would be a waste of judicial resources.

## II. The district court did not abuse its discretion in denying access to the search warrant affidavit under the common law.

"The Supreme Court has recognized that the press and the public have a common law qualified right of access to judicial records." *Goetz*, 886 F.2d at 65. Because "affidavits for search warrants are judicial records," this Court has recognized a "common law qualified right of access to the warrant papers." *Id.* at 64, 65. The common law right provides "less access" than any constitutional right. *See Media Gen. Operations*, 417 F.3d at 429 (comparing common law right to First Amendment right). The decision to seal "is committed to the sound discretion of the judicial officer who issued the warrant," who, based on "all of the relevant facts and circumstances," may "file all or some of the papers under seal for a stated time or until further order." *Goetz*, 886 F.2d at 65. "The judicial officer may deny access when sealing is 'essential to preserve higher values and is narrowly tailored to serve that interest.'" *Id.* at 65–66 (quoting *Press-Enter. Co. v. Superior Ct. of Cal.*, 464 U.S. 501, 510 (1984); *In re Wash. Post Co.*, 807 F.2d 383, 390 (4th Cir. 1986)). This Court reviews a "judicial officer's decision to seal" for "an abuse of discretion." *Id.* at 65.

The district court did not abuse its discretion in declining to unseal the search warrant affidavit based on the movant's qualified common law right of access. First,

sealing is essential to safeguard [redacted]

For the same reasons this concern qualifies as a compelling governmental interest, *see supra* pp. 28–29, it constitutes a "higher value[]" preserved by sealing. *See Goetz*, 886 F.2d at 66 (internal quotation marks omitted); *see also, e.g.*, *Media Gen. Operations*, 417 F.3d at 430 (crediting the government's reasons for sealing, including "the preliminary stage of the investigation; the potential impact on the parties searched if unproven criminal allegations were made public;" and "the impact of the affidavit's release on broader investigations in other districts"). Additionally, just as there is no less restrictive means to protect the government's compelling interest, *see supra* p. 30, sealing the affidavit is "narrowly tailored to serve" this interest. *See Goetz*, 886 F.2d at 66 (internal quotation marks omitted); *see also, e.g.*, *Media Gen. Operations*, 417 F.3d at 435 (agreeing "with the district court that it [was] clear and apparent from the affidavit that any disclosure of any of the information there would hamper the investigation"). Balancing the defendant's qualified right of access with the government's interest in protecting the integrity of an ongoing investigation, the district court did not abuse its discretion in maintaining the affidavit under seal.

## Conclusion

The Court should affirm the district court's order declining to unseal the search warrant affidavit.

Respectfully submitted,

Todd W. Blanche
Deputy Attorney General

/s/

Jacqueline R. Bechara
Assistant United States Attorney

## Statement Regarding Oral Argument

The United States respectfully suggests that oral argument is not necessary in this case. The legal issues are not novel, and oral argument likely would not aid the Court in reaching its decision.

## Certificate of Compliance

I certify that this brief was written using 14-point Times New Roman typeface and Microsoft Word 365.

I further certify that this brief does not exceed 13,000 words (and is specifically 8,614 words) as counted by Microsoft Word, excluding the table of contents, table of authorities, statement regarding oral argument, signature block, this certificate, the certificate of service, and any addendum.

I understand that a material misrepresentation can result in the Court's striking the brief and imposing sanctions.

/s/
Jacqueline R. Bechara
Assistant United States Attorney